**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **IN THE MATTER OF** **GRAND JURY INVESTIGATION** | No. 18-GJ-34 **UNDER SEAL** |

**MOTION BY ANDREW MILLER TO QUASH THE GRAND JURY SUBPOENAS REQUIRING HIS APPEARANCE BEFORE THE GRAND JURY; TO STAY THIS COURT'S JUNE 18, 2018, MINUTE ORDER ORDERING HIS APPEARANCE BEFORE THE GRAND JURY ON JUNE 29, 2018, PENDING DISPOSTION OF THIS MOTION; AND TO RELIEVE HIM FROM ANY FURTHER DUTY TO PRODUCE ADDITIONAL DOCUMENTS COVERED BY THE SUBPOENAS**

_____

**INTRODUCTION**

Andrew Miller hereby moves this Court for an order quashing two Grand Jury subpoenas issued on June 5 (Exhibits 1 and 2) and one on June 19, 2018 (Exhibit 3) requiring him to testify as a witness before the Grand Jury and/or produce documents; to vacate or stay this Court's Minute Order of June 18 ordering his appearance before the Grand Jury on June 29, 2018 (Exhibit 4); and to relieve him from any further obligation to search for and produce documents in addition to those voluminous documents that he has already provided to the government on June 25, 2018, in compliance with the Minute Order.

The basis for this motion is that (1) the appointment of Robert S. Mueller, III as Special Counsel violates the Appointment's Clause, U.S. Const., art II, sec. 2, cl. 2, and (2) to the extent the authority to issue the grand jury subpoena was based on the regulations governing the Special Counsel, 28 C.F.R. pt. 600, those regulations are unlawful and violate the separation of powers.

In that regard, Miller hereby adopts and incorporates by reference those same arguments in the recently filed Motion of Defendant Concord Management And Consulting LLCs To Dismiss The Indictment Based On The Special Counsel's Unlawful Appointment And Lack Of Authority To Indict Concord and Memorandum In Support in *United States of America v. Internet Research Agency LLC, et al.*, Crim. Action No. 18-00032 (DLF) (D.D.C.) (filed June 25, 2018) (hereinafter referred to as "Concord Mem."). *See* Exhibit 5.

Miller requests that the order requiring him to appear before the grand jury this Friday, June 29, 2018, be stayed pending disposition of this motion if government counsel does not voluntarily agree to an adjournment. In addition, in the interests of conserving judicial resources, Miller requests a stay in the briefing schedule of this motion pending disposition of the similar Concord Motion.

## SUMMARY OF ARGUMENT

1. Miller has standing to raise these objections to the Court's order to appear before the grand jury even though he has recently complied with producing the documents ordered to be produced by this Court's order of June 18, 2018. His motion is timely and he has not waived and expressly reserved his rights to raise any and all legal objections to the subpoena to compel his testimony and be subjected to civil or criminal contempt for not appearing or not answering without good cause, and to search for and produce any additional documents not already provided to the government.

2. Robert Mueller is exercising powers of an Officer of the United States and not as a mere government employee.

3. Robert Mueller's purported appointment by the Deputy Attorney General Rod Rosenstein as an Inferior Officer designated as a "Special Counsel" under existing law and

Department of Justice regulations is unlawful since Congress did not provide the Attorney General with statutory authority to appoint private citizens like Mr. Mueller to serve as a Special Counsel as required by the Appointments' "exception" clause that does not require inferior officers to be nominated by President and confirmed by the Senate.

4.   In the alternative, Robert Mueller is an unconstitutionally appointed Principal Officer under Article II because he is exercising powers of a Principal Officer but was not nominated by the President and confirmed by the Senate.

## ARGUMENT

### 1. Andrew Miller Has Standing to Challenge the Subpoena

Mr. Miller was served with two subpoenas dated June 5, 2018, both requiring his appearance before the Grand Jury on June 8, but only one of which required that he search and bring with him the documents described in the Attachment to one of the subpoenas.  *See* Exhibits 1 and 2.  After a filing a motion to quash on grounds not raised herein, this Court issued a Minute Order on June 18 requiring Mr. Miller's appearance before the Grand Jury on June 29 and to produce the documents requested as limited by agreement of the parties by June 25.  *See* Exhibit 4.

Notably, the Court's order requiring his grand jury appearance was conditional and remains valid "unless the parties notify the Court of an alternative arrangement."  Stated otherwise, if the government voluntary agrees with an adjournment of Miller's grand jury appearance pending disposition of the motion to quash, as requested by counsel for Miller contemporaneously with the filing of this motion, and the parties so notify the Court, the order to appear will be automatically vacated.

Mr. Miller has since complied with that part of the order producing voluminous documents in a file that is 100MB in size to government counsel on Monday, June 25.  In her cover email to government counsel, Aaron Zelinsky, Miller's counsel stated in pertinent part: "Mr. Miller does not waive and hereby preserves all rights he has to object to the subpoena requiring his appearance before the Grand Jury this Friday…and from any continuing duty or obligation to supply additional documents subject to the subpoena." *See* Exhibit 6.  Nevertheless, Mr. Zelinsky recently informed counsel that he is not satisfied with this production and is unreasonably requesting additional documents from Mr. Miller.  Accordingly, Mr. Miller is currently being subjected also to that part of the subpoena requesting the production of documents.

If required to appear before the Grand Jury, Mr. Miller and his attorney will have to incur expenses to travel to Washington, D.C., from St. Louis, Missouri.  If he does not appear, he will be subjected to a motion by government counsel to hold him in civil or criminal contempt.  If he does appear and refuses to answer questions based on his objection to the authority of Special Counsel, and the prosecutor does not believe that is "good cause" to refuse to answer questions, he will also be subject to contempt proceedings.  Accordingly, his liberty interests are at risk and he has standing to challenge the subpoena and order requiring him to appear before the grand jury; moreover, he has not waived his rights to do so but expressly reserved them.

Mr. Miller has the same right which every other person has not to be deprived of life, liberty, or property without due process of law.  Subpoenaing him to testify under oath before a grand jury is a deprivation of liberty without due process of law given that Robert Mueller's appointment as Special Counsel is unconstitutional.

As the Supreme Court noted in its recent decision regarding the status of Administrative Law Judges for the Securities and Exchange Commission under the Appointments Clause, "[t]his Court has held that 'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief. *Ryder v. United States*, 515 U.S. 177, 182-183 (1995)." *Lucia v. SEC*, 585 U.S. ---, No. 17-130, 2018 WL 3057893 (U.S. June 21, 2018) (hereinafter *Lucia*). This motion is timely since Mr. Miller is under a duty to appear before the grand jury. Moreover, the underlying basis for this motion has only been recently presented by the defendants in Concord in a case of first impression.

While the government will hopefully voluntarily agree to postpone Miller's grand jury appearance pending disposition of this motion, and thereby effectuate a stay this Court's order to appear, the continued request for further production of documents creates a continued need for an order quashing that portion of the subpoena unless government counsel also agrees to stay any further request for documents.

### 2. Robert Mueller Is an Officer of the United States

The Supreme Court recently addressed the question of whether Administrative Law Judges in the jurisdiction of the Securities and Exchange Commission (SEC) were Officers of the United States in *Lucia.*

The Court said in *Lucia* that, "[*Buckley v. Valeo*, 424 U.S. 1 (1976) (*per curiam*)] determined that members of [the Federal Election Commission] were officers because they 'exercised significant authority pursuant to the laws of the United States.' 424 U.S. at 126. The inquiry thus focused on the extent of the power an individual wields in carrying out his assigned functions." Slip op. at 6.

*Lucia* then held that the SEC's administrative law judges "exercised significant authority pursuant to the laws of the United States" because they exercised the same power as had officials of the United States Tax Court, which officials the Supreme Court had previously determined to be Officers of the United States in *Freytag v. Commissioner*, 501 U.S. 868 (1991).  *Id.*  The *Lucia* Court noted that the SEC's administrative law judges:  1) take testimony; 2) receive evidence and examine witnesses including taking depositions; 3) conduct trials and administer oaths; 4) make decisions on the admissibility of evidence; 4) issue subpoenas; and 5) have the power to punish contumacious conduct.  *Id.*  Seven justices of the Supreme Court in *Lucia* thus had little trouble in determining that the SEC's administrative law judges were, like their Tax Court counterparts in *Freytag* Officers of the United States and not mere employees.

The Court had earlier elaborated on the distinction between Officer of the United States and a government employee in *Buckley v. Valeo* where it said that:

> If 'all persons who can be said to hold an office under the government about to be established under the Constitution were intended to be included within one or the other of these modes of appointment,' it is difficult to see how the members of the [Federal Election] Commission may escape inclusion. If a postmaster first class, *Myers v. United States,* 272 U.S. 52 (1926), and the clerk of a district court, *Ex parte Hennen,* 13 Pet. 230 (1839), are inferior officers of the United States within the meaning of the Appointments Clause, as they are, surely the Commissioners before us are, at the very at the very least, such 'inferior Officers' within the meaning of that Clause.

424 U.S. at 126 (cases cited omitted).  Special Counsel Robert Mueller has the power to: 1) conduct criminal investigations anywhere in the United States and to convene grand juries; 2) to indict U.S. citizens, as well as 13 Russian citizens and three Russian corporate entities; 3) to seek revocation of bail and the incarceration before trial of defendants; 4) investigate alleged obstruction of justice by the president of the United States; 5) accept guilty pleas; 6) interview top White House aides and request documents ordinarily protected by executive privilege; 7) take testimony under oath and indict witnesses for lying to him; and 8) issue subpoenas to appear

before grand juries and produce documents subject to civil and criminal contempt for failure to do so.

Special Counsel Robert Mueller is much more powerful than are the SEC administrative law judges, whom the Supreme Court held were Officers of the United States in *Lucia*; or the Tax Court judges who were held by the Supreme Court to be Officers of the United States in *Freytag*.  Mueller has the power not only to deprive people of property, like the administrative law judges mentioned above.  Mueller can also deprive people of liberty, as well.  As the Supreme Court noted in *Buckley v. Valeo*, if a postmaster first class and the clerk of a district court are Officers of the United States then surely Robert Mueller is such an officer, as well.

This conclusion is also compelled by the Supreme Court's opinion in *Morrison v. Olson*, 487 U.S. 654 (1988), which held that independent counsels appointed under the Ethics in Government Act of 1978 were inferior officers of the United States and not mere government employees.  The conclusion that Robert Mueller is an Officer of the United States and not an employee is governed by the holding of the Court in *Morrison*, a case which has never been overruled.

In sum, Robert Mueller is an Officer of the United States, and not an employee, and Miller has standing to resist Mueller's unconstitutional effort to subpoena him.

### 3. Robert Mueller was not properly appointed as an Inferior Officer of the United States because Congress has not vested in the Attorney General the Power to Appoint Special Counsels

The Appointments Clause of Article II provides that:

 [The President  shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

The Appointments Clause provides that, as a default rule, all Officers of the United States are principal officers who must be nominated by the President, confirmed by the Senate, and then appointed by the President.[1] In recognition of the fact that principal officers "which may be established by Law," may on occasion need assistance in carrying out their duties, the Appointment Clause's further provides after the semi-colon, "but the Congress may **by Law** vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  Emphasis added.  This so-called "exception clause" has only one step: the appointment of the inferior officer.  But importantly, the prerequisite is that Congress **"by Law"** vest that appointment in "the President alone, in the Courts of Law, or in the Heads of Departments." The relevant provision for this motion is whether Congress "by Law" vested the appointment of a Special Counsel in the Attorney General, the head of the Justice Department.  Congress did not.

Robert Mueller was unconstitutionally appointed as an inferior officer of the United States because Congress has neither created an Office of Special Counsel to investigate wrong-doing by the President of the United States or other high level government officials nor **"by Law"** vested the appointment of such counsel in the Attorney General.

In the Ethics in Government Act of 1978, Congress did establish the Office of Independent Counsel, but vested the appointment of such counsel in a special court, not the Attorney General, as it was authorized to do under the exception clause allowing such appointments "in the Courts of Law."  However, this authority expired by its own terms in 1999, and, amid controversy about the wide-ranging power of such Independent Counsels, Congress did not enact another such statute.

---

[1] While the appointment of principal officers is a three-step process, for purposes of this discussion, this process will be described simply as a two-step procedure: appointment by the President and confirmation by the Senate.

Nevertheless, Attorney General Janet Reno took it upon herself to promulgate a Department of Justice regulation that purported to create Special Counsels to investigate high-level or presidential wrongdoing.  **"28 CFR 600.1 et seq. - Grounds for appointing a Special Counsel."**  But this internal operating regulation lacked a statutory underpinning and was therefore legally defective:  Congress never enacted a law that gave the Attorney General the unfettered power to appoint individuals like Robert Mueller to serve as Special Counsel inferior officers.

 On May 17, 2017, Deputy Attorney General Rod J. Rosenstein appointed a private attorney Robert Mueller to be a Special Counsel.  Dep't of Justice Order No. 3915-2017 ("Appointment Order" or "Order").  *See* Exhibit 7.  In his Order purporting to appoint Mr. Mueller as Special Counsel, Acting Attorney General Rod Rosenstein cited 28 U.S.C. Sections 509, 510, and 515 as the sole basis of his statutory authority to appoint Mueller as an inferior officer.  *Id.*[2]  But as will be demonstrated, none of these sections creates the office of independent counsel or vests the authority to appoint one in the Attorney General.

**(1)** 28 U.S.C. Section 509 provides:

"All functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General except the functions [not relevant here]."

This provision clearly neither creates any office of Special Counsel nor authorizes the Attorney General to appoint inferior officer Special Counsels.  It simply gives the Attorney General the authority to exercise and supervise all the functions of the Departments' officers and functions.

---

[2] Former Attorney General Janet Reno's regulation authorizing the appointment of private persons as inferior officer Special Counsels also purports to rest on these statutory provisions.  *See* 28 C.F.R. pt. 600.1.

**(2)** 28 U.S.C. Section 510 provides:

"The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

This unremarkable provision is simply the converse of Section 509 by authorizing the Attorney General to delegate his functions to other officers and employees of the Justice Department.  Like section 509, it neither creates any office of Special Counsel nor authorizes the Attorney General to appoint inferior officer Special Counsels.[3]

(3) 28 U.S.C. Section 515(a) reads as follows:

(a) The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General **under law,** may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings  *** whether or not he is a resident of the district in which the proceeding is brought.  (Emphasis added).

But this provision also does not authorize the creation of any new private citizen inferior officer Special Counsels like Robert Mueller.  There is no pre-existing "law" providing for any private attorney to be "specially appointed" by the Attorney General.  In that regard, undersigned counsel refers this Court to the attached Concord Mem. that does an excellent historical analysis of the phrase "under law" that demonstrates that it was equivalent to the original phrase used in the predecessor statute in 1906, namely, "under provision of law," which means a legislative enactment **other than** § 515(a).  In short, the Attorney General cannot bootstrap "under law" in section 515(a) to be the very same law authorizing him to appoint a Special Counsel.  *See* Concord Mem. at pp. 17-20.  If Congress believed since 1906 that § 515(a) itself conferred special counsel authority on the Attorney General, it would have had no need to pass additional ones that did, such as

---

[3]  *See also Morrison v. Olson,* 487 U.S. 654 (1988) (specifying that independent counsels must at least be inferior officers).

the Independent Counsel Act that has since expired.

As the Concord defendants succinctly put it:

> Thus presumed to have known of § 515(a) since its enactment in 1906, then, why did Congress proceed to pass multiple and **express** special/independent counsel appointment-authorization statutes in 1909; in the 1920s during the Teapot Dome scandal; and from the late 1970s through the late 1990s in the Ethics in Government Act and subsequent renewals? The only explanation is that Congress, consistent with the plain language of § 515(a), believed those separate appointment-authorization statutes were necessary **because § 515(a) did not itself confer that significant power.**

Concord Mem. at p.21 (emphasis added).

What Section 515(a) does do is to allow the Attorney General to appoint, for example, existing U.S. Attorneys to prosecute a case "whether or not he is a resident of the district in which the proceeding is brought."  It is thus a geographical provision and not a grant of power to appoint new Special Counsels.

For example, this statutory provision authorized then-Deputy Attorney General James Comey -- Attorney General John Ashcroft having been recused -- to appoint then-U.S. Attorney Patrick Fitzgerald for the Northern District of Illinois as a Special Counsel to investigate the leak of the identity of CIA agent Valerie Plame. *See* "*Special Counsel Names to Head Inquiry On Leak,*" New York Times, December 31, 2003.  Fitzgerald later prosecuted and convicted Scooter Libby – a criminal matter that was outside the jurisdiction of the Northern District of Illinois.

This provision also authorized the appointment of former Maryland U.S. Attorney Rod Rosenstein (now Deputy Attorney General) by then-Attorney General Eric Holder, along with U.S. Attorney Manchen, to conduct a joint investigation of press leaks of classified information from government offices in the District of Columbia and elsewhere.  *See* Josh Gerstein, "*Holder names leak probe prosecutors*," Politico, June 8. 2012.  Most recently, Attorney General Jeff Session appointed Utah U.S. Attorney John Huber on March 29, 2018 with the responsibility to

investigate alleged politicization and abuse of power of the FBI.  All of these U.S. Attorneys

were already principal officers of the United States "appointed . . . **under law**" who were tasked

with bringing legal proceedings outside their own districts.

 **(4)** While not cited in Rosenstein's appointment of Mueller, 28 U.S.C. Section 515(a)

must be read in context along with 28 U.S.C. Section 543:

> The Attorney General may appoint attorneys **to assist** United States Attorneys when the
> public interest so requires, including the appointment of qualified tribal prosecutors and
> other qualified attorneys to assist in prosecuting Federal offenses in Indian country.
> (Emphasis added).

 It is clear that Mueller was not appointed to assist U.S. Attorneys.  If anything, U.S.

Attorneys and Assistant U.S. Attorneys are assisting Mr. Mueller.  In addition, 28 U.S.C. 519

provides that: The Attorney General has the power to supervise "all activities of special attorneys

appointed under section 543 of this title in the discharge of their respective duties."  But this

reference also creates no new inferior officers just as 28 U.S.C. 543 creates no new inferior

officers.  Both provisions refer to attorneys already appointed by law who are assisting U.S.

Attorneys, which is not the function of Robert Mueller.

The Appointments Clause creates a default rule that all officers of the United States are

principal officers who must be nominated by the President and confirmed by the Senate.  It takes

affirmative action by Congress to pass a statute specifically vesting the Attorney General with

the power to appoint an inferior officer to be a Special Counsel.  Since Congress has never

passed such a statute, and indeed let the only statute providing for similar counsels to lapse in

1999, Robert Mueller was not constitutionally appointed an inferior officer.

Robert Mueller is therefore a government employee; but under *Buckley v. Valeo*, 424

U.S. 1 (1976), such employees cannot deprive citizens of life, liberty, or property on their own,

which makes Mueller's purported appointment as an inferior officer unconstitutional.

If the Attorney General could appoint inferior officer Special Counsels like Robert Mueller without expressly providing such an office by statute or without Senate confirmation, that power could lead to prosecutorial abuse.  One could imagine an Attorney General in the 1950's appointing a Special Counsel to go after communist infiltration in the government and entertainment industry, or an Attorney General today appointing several Special Counsels to look into alleged voter fraud, political enemies, and other targets.  To be sure, the Attorney General may lawfully direct <u>existing officers</u> subject to his direction, such as U.S. Attorneys, to pursue the Attorney General's enforcement priorities within the limits of their statutory authority, but he does not have the authority to create his own offices and then unilaterally choose officers or private citizens to do so as he has done in this case.

All of this suggests the wisdom of reading the statutes quoted above as not giving the Attorney General a free-wheeling power to elevate private persons like Robert Mueller to inferior officer status.  Acting Attorney General Rosenstein's mistake was to assume the lawfulness of former Attorney General Janet Reno regulations (which itself not a law) authorizing with no basis in statutory law the appointment of private persons to be inferior officer Special Counsels.  Instead, Deputy Attorney General Rosenstein should have directed one or more of the 94 Senate confirmed U.S. Attorneys to take on that task in addition to pursuing their other prosecutorial duties.

For these reasons and those provided in Concord's Mem. at pp.7-26 and incorporated herein, this Court should find that the Special Counsel was not an inferior office established "by Law" authorizing the Attorney General to make such appointments.

**4.  Robert Mueller is not an Inferior Officer but is Instead an Unconstitutionally Appointed Principal Officer**

In the event the Court concludes that Robert Mueller is a constitutionally appointed inferior officer, we submit in the alternative that Mueller is exercising much more power than any inferior officer – and is indeed exercising more power than any Senate confirmed U.S. Attorney – with little, if any, oversight or control. Therefore, he is a "principal officer" under the Constitution who must be nominated by the President and confirmed by the Senate.  Since Mueller was not appointed in the way prescribed under the default rule for appointments as a principal officer, his appointment is unconstitutional.

From 1789 to 2018 – for a period of 229 years –U.S. Attorneys have always been principal officers of the United States, nominated by the President and confirmed by the Senate. Given the importance of Mueller's job relative to that of any U.S. Attorney, it is obvious that it is of at least equal importance and that Mueller is acting as an unconstitutionally appointed principal officer.

Mueller is exercising so much prosecutorial power that he must be a principal officer.  It has been the longstanding practice of Congress and of the Executive Branch to recognize principal officer status for all important and powerful public officials even if they have a boss who can fire them.  Thus, Cabinet Secretaries have always been appointed as principal officers even though they can be fired by the President at will.  Deputy and Assistant Cabinet Secretaries, Ambassadors, and permanent U.S. Attorneys are also appointed as principal officers, even though they can be fired by the Cabinet Secretary they report to as well as by the President. This is because the importance of the office they hold is so great that the officers in question need to be principal officers and subject to scrutiny at appointment, Senate advice and approval, and impeachment.  It is unthinkable that, for example, the Deputy Secretaries of State or of

14

Defense or of the Justice Department could be appointed as an inferior officer. These officials exercise too much power to be denominated inferior officers even though they report to their respective Cabinet secretaries. They are instead principal officers, who must be nominated by the President and confirmed by the Senate.

The same is true of the Deputy Attorney General, Assistant Attorneys General, and of the 93 permanent U.S. Attorneys. Their jobs are so important and their authority to prosecute and seek incarceration of citizens so vast that they need to be and are nominated by the President, subject to confirmation hearings, and if confirmed, appointed by the President. Senators would never allow the Attorney General to unilaterally appoint the officers charged with conducting federal prosecutions in their home states thereby bypassing the confirmation process, except in limited circumstances where there is a vacancy, and only then for a short period of time. *See* 28 U.S.C. 546(d). For similar reasons, a permanent Special Counsel, like a permanent U.S. Attorney, simply must be a principal officer.

Mueller has acted and has behaved like a principal officer even though he was never nominated by the President nor confirmed by the Senate. In fact, Mueller is much more powerful than is a permanent U.S. Attorney because he has nationwide jurisdiction and can seek indictments of foreign citizens and corporations, as he did when he obtained indictments of more than a dozen Russian citizens and three Russian business entities. This action can have a major effect on U.S. foreign policy. Mueller's actual powers are more akin to those of an Assistant Attorney General. Accordingly, Mueller wields the power of a principal officer, and yet has not been nominated by the President or confirmed by the Senate.

Turning to the federal judiciary, that federal court of appeals judges and federal district judges have always been appointed as principal officers even though their decisions could be

overruled by the Supreme Court.  Congress has never attempted to vest in the Supreme Court the

power to appoint lower court judges as inferior officers.  And they can be removed from office

only by Impeachment.

But even Copyright Judges have been held to be principal officers requiring presidential

appointment and Senate confirmation even though they have a superior officer.  In *Intercollegiate*

*Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332 (D.C. Cir. 2012), the D.C. Circuit held that

the removability factor "support[ed] a finding that the [copyright judges] are principal officers"

because, as here with respect to the Special Counsel's protection, the copyright judges could be

removed by a superior officer "only for misconduct or neglect of duty."  684 F.3d at 1339-40.  Those

reasons for removability are similar to the ones found in the Justice Department's regulations

governing the conduct of the Special Counsel.

In its filing, Concord set out the criteria for determining whether an officer is an inferior or

principal officer:

> Consistent with *Edmond*, *Free Enterprise Fund*, and *Intercollegiate*, three
> overarching criteria dictate whether an officer is a principal or inferior one: first, whether an
> officer is "directed and supervised" by persons "appointed by Presidential nomination with
> the advice and consent of the Senate"; second, whether an officer can make a "final decision
> on behalf of the United States" without prior permission from "other Executive Officers";
> and third, whether the officer is removable at will. Applying the three criteria here, the
> Special Counsel is no less a principal officer than the copyright judges in *Intercollegiate*.
> In the interests of judicial economy, Miller adopts by reference the arguments made in

Concord Mem. at pp.29-32.

Indeed, "In public court filings, the Special Counsel has made it clear that he believes the

Order gives him the unfettered authority to investigate any Russian interference with the 2016

presidential election or the candidates in it, without regard to the narrower grant of jurisdiction

specifically conferred by the Order or the applicable "regulatory guidelines."  See Gov't Resp. to

Def. Concord Mgmt. & Consulting LLC's Mot. for In Camera Review of Grand Jury Materials."

Concord Mem. at p.4.  Moreover, the lack of supervision of the Special Counsel is also a criterion to determine whether he is an inferior or principal officer.  Again, as Concord compellingly argued:

> While the [Department of Justice] Regulations purport to address the Attorney General's role with respect to a special counsel, *see* 28 C.F.R. § 600.7(b), they also make clear that any supervision is *de minimis* at most and not nearly enough to turn this Special Counsel into an inferior officer.  Indeed, the Regulations give the Special Counsel very wide latitude subject to no meaningful, substantive oversight or supervision by the Attorney (or Deputy Attorney) General.

Concord Mem. at p.31.

The text of the Appointments Clause and the use of the word "inferior" elsewhere in the Constitution make it clear that there are two prerequisites that must be met for someone to be an inferior officer.  First, one must have a boss whom the inferior officer reports to who can direct and supervise, or fire the inferior officer.  And, second, an office cannot be inferior if the officer exercises as much power as is exercised by the 93 permanent U.S. Attorneys, the Deputy and Assistant Cabinet secretaries, or lower federal court judges.  This second test, as to officer inferiority, is somewhat subjective in close cases, but it is very real nonetheless.  If a prosecutor has as much power as an Assistant Attorney General or a permanent U.S. Attorney, he is by definition a principal officer of the United States, who must be nominated by the President and confirmed by the Senate.

To be an inferior officer, one must not only have a boss who is supervising and controlling your work, one must also occupy an office that is unimportant enough that it can be held by an inferior officer.  Justice David Souter made exactly this point when he concurred in Justice Scalia's opinion in *Edmond v. United States*, 520 U.S. 651 (1997), but with the following critical caveat:

> Because the term "inferior officer" implies an official superior, one who has no superior is not an inferior officer. This unexceptionable maxim will in some instances be dispositive of status; it might, for example, lead to the conclusion that United States district judges cannot be inferior officers, since the power of appellate review does not

extend to them personally, but is limited to their judgments. See In re Sealed Case, 838 F.2d 476, 483 (CADC), rev'd sub nom. *Morrison v. Olson*, 487 U. S. 654 (1988) (suggesting that "lower federal judges ... are principal officers" because they are "not subject to personal supervision," 838 F. 2d, at 483); cf. ante, at 665.

It does not follow, however, that if one is subject to some supervision and control, one is an inferior officer. Having a superior officer is necessary for inferior officer status, but not sufficient to establish it. *See, e. g., Morrison v. Olson*, 487 U. S., at 654, 722 ("To be sure, it is not a sufficient condition for 'inferior' officer status that one be subordinate to a principal officer. Even an officer who is subordinate to a department head can be a principal officer") (SCALIA, J., dissenting). Accordingly, in Morrison, the Court's determination that the independent counsel was "to some degree 'inferior'" to the Attorney General, see id., at 671, did not end the enquiry. The Court went on to weigh the duties, jurisdiction, and tenure associated with the office, id., at 671-672, before concluding that the independent counsel was an inferior officer. Thus, under Morrison, the Solicitor General of the United States, for example, may well be a principal officer, despite his statutory "inferiority" to the Attorney General. *See, e. g.*, 28 U. S. C. § 505 (directing Presidential appointment, with the advice and consent of the Senate, of a Solicitor General to "assist the Attorney General in the performance of his duties"). The mere existence of a "superior" officer is not dispositive.

*Id.* at 663.  The *Morrison v. Olson* test for officer inferiority is that a statute could not constitutionally interfere with the President's executive power "too much" by giving executive power to so-called inferior officers, thereby taking away the President's nomination power. Specifically, Chief Justice Rehnquist said in his opinion for the Supreme Court in *Morrison v. Olson* that four factors must be satisfied before an officer can properly be deemed an inferior office.  First, they must be removable by a boss.  Second, they must perform only "certain, limited duties."  Third, the officer must be limited in jurisdiction.  And, fourth, the officer must be given a job with a fixed ending point.

The second part of Chief Justice Rehnquist's four-part test is clearly violated by the Robert Mueller appointment.  Mueller is not "empowered *** to perform only <u>certain, limited duties</u>." (Emphasis added).  The Supreme Court held in *Morrison* that Alexia Morrison could be a court appointed Special Counsel rather than one appointed by the President, because she was only prosecuting *one* former government official, Theodore Olson, for two alleged crimes.  By

contrast, Robert Mueller is instead engaging in a wide-ranging investigation, both here and abroad; seeking indictments of alleged criminal activity by the President of the United States and his campaign, and his advisors; executing search warrants; issuing scores of subpoenas; indicting over 20 individuals; sought and obtained the revocation of bail for one of them; and securing convictions of four of them; all without limitation to specified people or specified crimes.

The difference between Alexia Morrison's power and Robert Mueller's power is stark. Mueller's appointment violates part two of the *Morrison* test by not being limited to the performance of certain duties. And his appointment violates part three of the *Morrison* test because he is not an officer whose jurisdiction is limited. The Mueller appointment also violates the final part of Chief Justice Rehnquist's *Morrison* opinion because it interferes "too much" with the President's executive power.

The Roberts Supreme Court briefly revisited the two inferior officer appointment tests in *Free Enterprise Fund v. Public Company Accounting Oversight Board ("PCAOB")*, 561 U.S. 477 (2010). In that case, Chief Justice Roberts wrote that:

> Our Constitution divided the "powers of the new Federal Government into three defined categories: Legislative, Executive, and Judicial." *INS v. Chadha*, 462 U.S. 919, 951 (1983). Article II vests the power "[t]he executive Power … in a 'President of the United States of America' who must "take Care the Laws be faithfully executed." Art. II, Section 1, cl. 1; id. Section 3. In light of "[t]he impossibility that one man should be able to perform all the great business of the State", the Constitution provides for executive officers to "assist the supreme Magistrate in discharging the duties of his trust." 30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939).

The Chief Justice concluded that the PCAOB officers in question were removable at will by the Securities and Exchange Commission and that the SEC had other power to review the commission's work, which was limited in scope, and removable for "good cause." In light of these two factors taken together, Chief Justice Roberts concluded that the PCAOB commissioners satisfied the *Edmond* test of officer inferiority who were being directed and

supervised by a principal officer and were, in addition, unimportant officers who did not need to be nominated by the President and confirmed by the Senate.  The PCAOB Court did not overrule or even address the *Morrison v. Olson* test of officer inferiority, which had been briefed by the parties.  *Morrison v. Olson*, as supplemented by *Edmond,* remains good law today with respect to officer inferiority. *See also* Concord Mem. at pp.36-39 (discussing *Morrison*).

\* \* \* \* \*

## CONCLUSION

For the foregoing reasons, the motion to quash the subpoenas and to vacate, or in the alternative, to stay this Court's Order compelling Andrew Miller to appear and testify before the Grand Jury on June 29, 2018, should be granted.

Respectfully submitted,

*/s/Alicia I. Dearn*
Alicia I. Dearn, Esq.
Admitted *pro hac vice*
Bellatrix PC
231 S. Bemiston Avenue, Ste 850 #56306
Saint Louis, MO 63105
(314) 526-0040
(314) 526-0044 (facsimile)
notices@bellatrixlaw.com

*/s/ Paul D. Kamenar*
Paul D. Kamenar, D.C. Bar #914200
1629 K Street, N.W.
Suite 300
Washington, D.C. 20006
(301) 257-9435
(301) 656-6562 (facsimile)
paul.kamenar@gmail.com

*Counsel for Andrew Miller*

Date: June 28, 2018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of June, 2018, a copy of the foregoing document was delivered by electronic mail to:

Aaron Zelinsky, Esq
US Department of Justice Special Counsel's Office
RM B-103
950 Pennsylvania Ave NW
Washington DC, 20530
ASJZ@usdoj.gov

<div style="margin-left:40%;">

*/s/Alicia I. Dearn*
Alicia I. Dearn, Esq.
Admitted *pro hac vice*
Bellatrix PC
231 S. Bemiston Avenue, Ste 850 #56306
Saint Louis, MO 63105
(314) 526-0040
(314) 526-0044 (facsimile)
notices@bellatrixlaw.com

</div>