*** *SEALED* ***

```
              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA

 * * * * * * * * * * * * * * *
IN RE:                            )
Grand Jury Investigation          ) Case No. 18-34
United States of America,         )
Interested Party.                 )
                                  ) June 18, 2018
                                  ) Washington, D.C.

 * * * * * * * * * * * * * * *
```

*SEALED*
**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**

**APPEARANCES:**

```
FOR THE GOVERNMENT:  AARON J. ZELINSKI
                     ADAM JED
                     SPECIAL COUNSEL
                     1400 I ST NW, Suite 325
                     Washington, D.C. 20005
                     (202) 737-3436


FOR THE WITNESS:     ALICIA I. DEARN
                     231 S Bemiston Avenue
                     Suite 850, #56306
                     St. Louis, MO 63105
                     (314) 526-0040


ALSO PRESENT:        CURTIS HEIDE, Special Agent
                     MICHELLE TAYLOR

Court Reporter:      Elizabeth Saint-Loth, RPR, FCRR
                     Official Court Reporter
                     U.S. Courthouse
                     Washington, D.C.  20001
```

Proceedings reported by machine shorthand,
transcript produced by computer-aided transcription.

*** *SEALED* ***

```
                      P R O C E E D I N G S
1
2             THE DEPUTY:  Matter before the Court, Grand Jury
3    Action No. 18-34, United States of America interested party.
4             Counsel, please come forward and identify
5    yourselves for the record.
6             MR. ZELINSKY:  Good afternoon, Your Honor.
7             Aaron Zelinsky on behalf of the United States,
8    along with Adam Jed.  Along with us at counsel table are
9    Special Agent Curtis Heide and Michelle Taylor.
10            THE COURT:  Good afternoon.
11            MS. DEARN:  Good afternoon, Your Honor.  Alicia
12   Dearn on behalf of the witness, Andrew Miller, who is also
13   at counsel table.
14            THE COURT:  Good afternoon, MS. DEARN.
15            I see that your pro hac vice motion was made, and
16   I have already granted it today.
17            MS. DEARN: Yes.  Thank you.
18            THE COURT:  All right.  Before me I have two
19   separate motions, as I see it, and have reviewed the papers.
20   The first is the witness's motion to quash or modify the
21   grand jury subpoena; and, then, the second is the
22   Government's motion to compel an order to show cause why
23   Mr. Miller should not be held in contempt.
24            So let me start with the witness's motion to
25   modify the grand jury subpoena.  MS. DEARN, why don't you
```

1   step forward.
2           Since the Government has agreed to run the search
3   terms that you proposed, is there any reason to proceed with
4   your motion?
5           MS. DEARN:  I did not understand that the
6   Government had agreed to the search terms that I proposed;
7   but, if that is the case, I would accept that.
8           THE COURT:  Okay.  Mr. Zelinsky.
9           MR. ZELINSKY:  Let me make sure.
10          THE COURT:  Because, as I read it, the Government
11  agrees to limit the subpoena for documents to have the
12  search terms proposed by Miller.
13          MR. ZELINSKY:  That is correct, Your Honor.
14          THE COURT:  Is there any ambiguity in that that I
15  am missing?
16          MR. ZELINSKY:  No, Your Honor.
17          THE COURT:  All right.  So what's the Government's
18  view on the witness's motion to quash or modify the grand
19  jury subpoena to limit it to the search terms she proposed?
20          MR. ZELINSKY:  The Government acquiesces in that
21  motion, Your Honor.
22          THE COURT:  So is it the Government's view that
23  this motion should be denied as moot?
24          MR. ZELINSKY:  Yes.
25          THE COURT:  Okay.

1        MS. DEARN, why shouldn't I deny your motion as
2   moot given the representation that was set out in the first
3   paragraph of the Government's reply and confirmed by
4   Mr. Zelinsky?
5        MS. DEARN:  Well, I just would like it on the
6   record that these are in fact the search terms we've agreed
7   to.  We don't have a proposed order.  But I would prefer
8   that the subpoena either be modified pursuant to the search
9   terms that we have requested so that we have some kind of
10  record.
11       My concern, of course, is that we comply with the
12  subpoena, as we understand it, and later there is an issue.
13  For purposes of making sure that it's clear, I would ask the
14  Court to confirm and modify the subpoena in order for us to
15  have a new modified subpoena from the Government.
16       THE COURT:  That request is denied.
17       You already have a representation from the
18  Government that they're going to comply with the search
19  terms that you have -- the search terms that you have
20  proposed will satisfy the subpoena.  And I think that that
21  suffices.  I am going to deny your motion as moot.
22       We will proceed with the next motion.
23       MS. DEARN:  Your Honor.
24       THE COURT:  Yes?
25       MS. DEARN:  May I add that not only did we want

1   reduced search terms; but we also wanted the testimony to be
2   limited to certain topics related to the five or six terms
3   that they gave us.  So it's not just the document
4   production, but it's the testimony itself.  Otherwise, we
5   will be in a position of having to take the Fifth Amendment.
6              THE COURT:  Precisely, what are you asking for, in
7   terms of limiting the -- somehow limiting the scope of the
8   questions that the grand jury could pose?
9              I understood the search term part of your motion
10  to modify the subpoena.  But I certainly didn't quite
11  understand what you were getting at in terms of the
12  questions.
13             MS. DEARN:  I think that's fair, Your Honor.
14             THE COURT:  Maybe -- why don't we start by laying
15  out what I do understand and what I don't understand.
16             MS. DEARN:  Okay.
17             THE COURT:  So both parties' papers are pretty
18  limited, in terms of describing sort of the underlying facts
19  here, other than the fact that Mr. Miller worked at some
20  point, in 2015 and 2016, for Mr. Stone.  Exactly what his
21  role was, I don't precisely know what precisely he did.  All
22  I know is what is based in Mr. Miller's affidavit.
23             So it's hard for me to start saying with a lot
24  more facts than have been provided in Mr. Miller's affidavit
25  what may or may not be appropriate for any limitation on

1    questions that may be posed to him before the grand jury.
2    Wouldn't you say?
3            MS. DEARN:  Well, I think perhaps the relief that
4    I'm really seeking is that he be granted immunity, otherwise
5    he's going to have to take the Fifth Amendment.
6            We had -- we were attempting to negotiate with the
7    other side, as far as the limitation of topics.  I think, as
8    we stand here before the Court, really what we're asking for
9    is if we're going to ask about or take testimony --
10           THE COURT:  Well, let me just get this clear.
11           First -- because I found your papers a little bit
12   confusing on this point, about precisely what you are asking
13   for.  So you want a limitation on the questions he can be
14   asked limited to those search terms; is that correct?
15           MS. DEARN:  There are six topics that are in the
16   subpoena duces tecum.
17           THE COURT:  If he's asked about those topics, that
18   would be fine?
19           MS. DEARN:  We would still like some grant of
20   immunity.
21           THE COURT:  As to which topic; Roger Stone,
22   WikiLeaks, Julian Assange, Guccifer 2.0, DCLeaks, the
23   Democratic National Committee?
24           MS. DEARN:  Roger Stone.
25           THE COURT:  So if there are questions posed about

1    Roger Stone, those are the questions for which your client
2    will assert the Fifth Amendment; is that right?
3              MS. DEARN:  Well, the concern is that there are
4    going to be questions asked about finances and transactions
5    that like -- there were political action committees that he
6    assisted Mr. Stone with.  And we're concerned that there may
7    be some financial issues with those transactions.  So that's
8    what he would be asserting the Fifth Amendment over.
9              But, as I understand it, he would have to assert
10   it at the beginning.  That would certainly interfere with
11   the ability to take any testimony from him, if we're
12   starting with the Fifth Amendment from the beginning.
13             THE COURT:  Well, not necessarily.  I mean, you
14   know, you can assert -- you can answer a whole bunch of
15   questions for which he has no Fifth Amendment privilege, you
16   know, and then just assert the privilege as to the questions
17   where you believe he has vulnerability.  So it's not about
18   all six of the topics; it's just any question about Roger
19   Stone.
20             MS. DEARN:  Right.  We don't believe he has any
21   information about the other topics, that's why there
22   wouldn't be anything that I think would come up.
23             So with respect to his relationship with
24   Mr. Stone, although I believe he's innocent of any
25   wrongdoing, I don't want my client to step into something

1  that might be happening.
2            I think our request really is that we limit the
3  testimony or that we have some kind of immunity before he
4  testifies to make sure that he is not in a position of
5  losing -- waiving his Fifth Amendment rights.
6            THE COURT:  Okay.  Well, let me just hear from the
7  Government on this.
8            MS. DEARN:  Thank you.
9            THE COURT:  Okay.  Mr. Zelinsky, what is the
10 Government's position with respect -- I have read your
11 paper -- your two-page reply.
12           What's the Government's position with respect to
13 the request for use immunity by the witness before he
14 responds I guess to questions regarding Roger Stone?
15           MR. ZELINSKY:  Your Honor, first, we would seek
16 some kind of proffer from counsel as to what the nature of
17 the Fifth Amendment assertion would be.  It's a bit
18 contradictory here because, as Your Honor noted, counsel's
19 filing appears to say two things.  On the one hand, that the
20 witness knows nothing, has nothing to hide, and has
21 participated in no illegal activity.  On the other hand,
22 that there is a Fifth Amendment concern there.
23           Obviously, we are not in a position to be able to
24 assess the nature of that concern.  But the Fifth Amendment
25 cannot be asserted as a broad brush to stop grand jury

1    questioning.  It needs to be asserted in response to
2    specific questions.
3            So the Government's position is, certainly, an
4    intention to assert the Fifth Amendment does not exclude
5    Mr. Miller's attendance pursuant to the grand jury subpoena.
6    And, moreover, without knowing a little more about the
7    nature of Roger Stone at large, the Government is not in a
8    position at this time to make a decision one way or the
9    other as to whether Mr. Miller will be granted blanket
10   immunity.
11           The Government would be willing --
12           THE COURT:  Have you made efforts to talk to MS.
13   DEARN about exactly what that proffer would be?  There is no
14   reason for the Court to have to be involved in hearing that.
15           MR. ZELINSKY:  The efforts we've made with
16   Mr. Dearn have been limited thus far, frankly, by difficulty
17   in the response, Your Honor.
18           We have indicated that we are interested in
19   pursuing that possibility with her.  The standard first step
20   that we would take would be a proffer agreement, rather
21   than, as I'm sure the Court knows, a full on *Kastigar* order.
22           The Government is more than willing to enter into
23   a proffer agreement with Mr. Miller to hear what he has to
24   say and make a determination as to whether or not he will be
25   granted immunity.

1   THE COURT:  Is my recollection correct that
2   Mr. Miller has sat down with FBI agents already?
3   MR. ZELINSKY:  For a brief interview prior to
4   Ms. Dearn's appearance in the case.
5   Actually, at that point, Mr. Miller made no
6   indication that he had any Fifth Amendment concerns.  In
7   fact, he was going to come to meet at our office on the
8   following Monday.  As outlined --
9   THE COURT:  For an informal interview --
10  MR. ZELINSKY:  Correct, Your Honor.
11  THE COURT:  -- without a proffer agreement?
12  MR. ZELINSKY:  Correct.
13  As outlined in our filings, I heard from MS. DEARN
14  who indicated she might be representing Mr. Miller who
15  indicated he would not be coming, and then didn't hear again
16  for some time.
17  We have consistently attempted to engage, as we do
18  with all witnesses, with this witness and counsel in order
19  to minimize the inconvenience to the Court.  The Government,
20  obviously, takes very seriously its duty to safeguard the
21  Court's time and energy in this case; and we have not come
22  to the Court lightly.
23  It has been very difficult to be able to engage in
24  the normal kinds of conversations that we have with counsel
25  to iron out these issues, which is the Government's practice

```
 1    to regularly do.  The Government's proposal --
 2              THE COURT:  When is the next time that Mr. Miller
 3    would be scheduled to testify before the grand jury?
 4              MR. ZELINSKY:  It would be a week from this
 5    Friday, Your Honor.
 6              THE COURT:  Which is the 29th?
 7              MR. ZELINSKY:  29th.  That's correct.
 8              THE COURT:  29th.  Okay.  So that's plenty of time
 9    to get a lot of these things done --
10              MR. ZELINSKY:  That is our hope, Your Honor.
11              THE COURT:  -- including the production of
12    documents that were requested running those search terms.
13              All right.  Thank you.
14              MS. DEARN.
15              Okay.  So I take it that the only documents that
16    the witness has with respect to the six search terms are
17    co-extensive with the period of time he worked for
18    Mr. Stone, 2015 and 2016; is that correct or incorrect?
19              MS. DEARN:  I think that's incorrect.  He worked
20    with Mr. Stone prior to 2015.  But the subpoena calls for a
21    June 2015 to present, so we would search for that period.
22              THE COURT:  Okay.  And -- so if he stopped working
23    for Mr. Stone in 2016, is it fair to say that you are only
24    looking for records from June -- having to run these
25    searches against records from June 1, 2015 to the end of
```

1       2016?  Or are there documents beyond 2016?
2              MS. DEARN:  There are documents beyond 2016.  And
3       that is -- he still receives emails that are forwarded, so
4       we would have to search through those.
5              THE COURT:  All right.  Well, that was one of the
6       things that was a little bit ambiguous, perhaps
7       intentionally so, in Mr. Miller's affidavit.  Because
8       paragraph 12 does say:  I did searches for the terms given
9       to me in the subpoenas and found thousands of documents.
10      Many of those documents are emails received to Mr. Stone's
11      website using the address of stone@stonezone.com and are
12      from the general public because -- and he goes on to say:  I
13      was forwarded the email at -- "at" meaning as a catchall --
14      so that I could respond to the remaining booking requests.
15      And there is no time frame on that paragraph 12, even though
16      another paragraph says that he only worked for Mr. Stone
17      very little in 2015 and 2016.  By 2015 he had been replaced
18      as an assistant and doesn't really talk about anything post
19      2016.
20             But paragraph 12 is some service that Mr. Miller
21      is performing up to the present day; is that correct?
22             MS. DEARN:  The service is not being performed;
23      it's just the email still comes.  We have asked them to
24      stop, and they haven't yet.  It is just a matter that he's
25      still receiving the forward.  So there may be responsive

1   documents, but it's not that he is still working for
2   Mr. Stone.
3            THE COURT:  Okay.  So Mr. Miller is going to be
4   directed to perform the searches as agreed to between the
5   Government and defense counsel, as put on the record here,
6   on all of the documents that he has, including all these
7   forwarded emails, and produce the results of those searches
8   to the Government.
9            Have you all conferred about a date for that
10  production?  Or do you want me to just pull a date out of
11  thin air --
12           MS. DEARN:  I am willing to confer with counsel --
13           THE COURT:  -- because I am willing to fill every
14  vacuum in this case if there is a lack of agreement between
15  counsel.
16           So you can take a minute or two to confer after
17  this; otherwise, I am going to direct a date for when that
18  production will be performed and completed since you have
19  had a lot of time already since the original subpoena.
20           Mr. Miller is also going to be directed to appear
21  in front of the grand jury on July 29th -- June 29th, as
22  directed by the subpoena and the Court.  And if, between now
23  and then, the regular course occurs where you persist in
24  seeking use immunity -- the Government just doesn't
25  willy-nilly give use immunity; they have to have a basis for

1   it.  They have to justify for it.  The Special Counsel has
2   to ask for it from justice department officials, and it has
3   to be granted.  They just can't just do it because we want
4   it; that doesn't work in the Government.  A proffer is
5   necessary.
6           MS. DEARN:  Correct.  I understand.
7           THE COURT:  So you have time to do it between now
8   and June 29th.  Or, question by question, you are going to
9   have to figure out how the witness is going to comply.
10          MS. DEARN:  Thank you.
11          THE COURT:  And then you will appear in front of
12  me again for me to resolve any motions that may arise from
13  that.
14          So I am going to give you two seconds, right now,
15  to confer with Mr. Zelinsky about a date for the production;
16  otherwise, I will direct one.
17          MS. DEARN:  Okay.  Thank you.
18          THE COURT:  Proceed.  I am going to stay right
19  here because this is not going to take you long.
20          And the date agreed to is?
21          MS. DEARN:  Monday at noon, and I can provide them
22  electronically.
23          THE COURT:  All right.  That worked out very well.
24  Hopefully, the rest of this will work out well and I hope
25  not to see you all again.

1          MS. DEARN:  Thank you, Your Honor.

2          THE COURT:  All right.  Is there anything further

3    today for the witness?

4          MS. DEARN:  Not for the witness.

5          THE COURT:  Mr. Zelinsky.

6          MR. ZELINSKY:  Nothing further, Your Honor.

7          THE COURT:  All right.  Good.  You are all

8    excused.

9          (Whereupon, the proceeding concludes, 2:29 p.m.)

10                        *  *  *  *  *

11                          **CERTIFICATE**

12

13         I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

14   certify that the foregoing constitutes a true and accurate

15   transcript of my stenographic notes, and is a full, true,

16   and complete transcript of the proceedings to the best of my

17   ability.

18

19

20      Dated this 29th day of June, 2018.

21

22      /s/ Elizabeth Saint-Loth, RPR, FCRR
        Official Court Reporter
23

24

25