

**U.S. Department of Justice**

*The Special Counsel's Office*

_____

*Washington, D.C. 20530*

July 18, 2018                    **FILED**

                                 **JUL 1 9 2018**

Under Seal

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Hon. Beryl A. Howell, Chief Judge
U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington, D.C. 20001

      Re:    No. 18-GJ-34, Motion of Andrew Miller to Quash Grand Jury Subpoenas

Dear Chief Judge Howell:

      The government submits this letter in order to respond to the Court's question at today's hearing concerning the recusal of the Attorney General and to provide citations and discussion in response to new arguments raised by the witness in his reply brief.

      1.      Recusal of the Attorney General

      The Attorney General did not issue a formal order of recusal.  He did, however, memorialize his action and provide its legal basis.  That practice is consistent with past Attorneys General who have recused themselves from particular investigations.

      On March 2, 2017, the Attorney General issued a written public statement recusing himself "from any existing or future investigations of any matters related in any way to the campaigns for President of the United States."  Attorney General Sessions Statement on Recusal (Mar. 2, 2017), *available at* https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal.

      The Attorney General later informed the Senate Select Committee on Intelligence in writing that he recused himself "because a Department of Justice regulation, 28 CFR 45.2, required it."  Attorney General Jeff Session Prepared Remarks to the United States Senate Select Committee on Intelligence (June 13, 2017) (Attachment A), *available at* https://www.justice.gov/opa/speech/attorney-general-jeff-sessions-prepared-remarks-united-states-senate-select-committee.  As the Attorney General explained, "[t]hat regulation states, in effect, that Department employees should not participate in investigations of a campaign if they have served as a campaign advisor."  *Id.*

      The provision cited by the Attorney General, Section 45.2 of Title 28 of the Code of Federal Regulations, implements a statutory requirement that the Department of Justice have "rules and regulations which require the disqualification of any officer or employee of the Department of

2

Justice * * * from participation in a particular investigation or prosecution if such participation may result in a personal, financial, or political conflict of interest, or the appearance thereof." 28 U.S.C. § 528. Section 45.2 implements that statute and bars participation in criminal investigations and prosecutions based on certain "personal and political relationship[s]." 28 C.F.R § 45.2(a); *see also* 48 Fed. Reg. 2318-2319 (Jan. 19, 1983) (promulgation of rule citing statutory basis).

The government is not aware of any statutory or regulatory requirement that a recusal be formalized in an order or other memorandum. *See generally* 5 C.F.R § 2635.502(e)(2) (government-wide disqualification provision noting that no "written disqualification statement" is generally required, but "an employee may elect to create a record of his actions by providing written notice to a supervisor or other appropriate official"). The legal effect of the Attorney General's recusal is determined by 28 U.S.C. § 508(a). In accordance with Section 508(a), when the Attorney General recused, the Deputy Attorney General became "vested with the full authority of the officer for whom he acts." *Acting Officers*, 6 Op. O.L.C. 119, 120, 1982 WL 170676, at *2 (1982) (citing, *inter alia*, *Ryan v. United States*, 136 U.S. 68, 81 (1890)).

> 2. The Attorney General's Recusal Constitutes a "Disability" Under 28 U.S.C. § 508(a)

Miller argues (Reply 12-17) that in cases of recusal, no law places the Deputy Attorney General atop the Department of Justice, therefore acting as the head of the Department. That is incorrect. Section 508(a) provides that "[i]n case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office." 28 U.S.C. § 508(a). A recusal constitutes a "disability" for purposes of Section 508(a). That conclusion follows from case law, the Department of Justice consistent practice, the construction of an analogous provision in the Federal Rules of Criminal Procedure, standard definitions, and common sense:

a. *Case law.* In *United States v. Libby*, 429 F. Supp. 2d 27 (D.D.C. 2006), which involved the appointment of a Special Counsel by the Acting Attorney General following the Attorney General's recusal, the court explained that "[u]pon the Attorney General's recusal from participation in the investigation * * *, the Deputy Attorney General, pursuant to 28 U.S.C. § 508(a), was vested with all the powers of the Attorney General," within the scope of that recusal. *Id.* at 31. To the best of the government's knowledge, no formal order of recusal was entered by the Attorney General in that instance.

b. *Office of Legal Counsel opinions.* The longstanding view of the Office of Legal Counsel is that if the Attorney General is recused, he is disabled from participating in matters covered by his recusal. See *Congressional Subpoenas of Department of Justice Investigative Files,* 8 Op. O.L.C. 252, 255 n.3, 1984 WL 1783690, at *3 n.3 (1984) ("As a matter of practice and statutory construction, the Department has treated the Attorney General's recusal from a matter as the equivalent of a disability. Under the departmental succession statute, the Deputy Attorney General becomes Acting Attorney General with respect to the matter. See 28 U.S.C. § 508.").

3

     c.  *Analogous authority.*  This interpretation of Section 508 is consistent with judicial interpretations of Federal Rule of Criminal Procedure 25(a) ("Judge's Disability'), which states that if a judge cannot proceed with trial "because of death, sickness, or other disability," another judge in the same court may complete the trial.  Fed. R. Crim. P. 25(a)(1).  At least four courts of appeals have interpreted the word "disability" in that rule to include recusal.

- *In re United States*, 614 F.3d 661, 662 (7th Cir. 2010)

- *United States v. Hall*, 171 F.3d 1133, 1153 (8th Cir. 1999)

- *United States v. Sartori*, 730 F.2d 973, 976 (4th Cir. 1984)

- *Bennett v. United States*, 285 F.2d 567, 572 (5th Cir. 1960)

The Ninth Circuit reached a contrary conclusion in *United States v. Jaramillo*, 745 F.2d 1245, 1249 (9th Cir. 1984), but the court did not question that the word "disability" could encompass recusal.  The court instead reasoned that in the context of a rule about a judge's completion of an ongoing trial, recusal, unlike "death" or "sickness," could affect the integrity of prior proceedings—a rationale that would not apply here.

     d.  *Textual analysis.*  The government's longstanding interpretation of Section 508 accords with the statutory text.  Contrary to Miller's contention (Reply 14-15 & n.10), the word "disability" is not limited to being "physically sick," but includes a legal disability that prevents the Attorney General from performing his functions (as existed here by virtue of the Attorney General's recusal under 28 C.F.R. § 45.2).

     Modern dictionaries broadly define the word "disability" as "[t]he inability to perform some function*," Black's Law Dictionary* 559 (10th ed. 2014) (def. 1).  This includes "a disqualification, restriction, or disadvantage" and "lack of legal qualification to do something," *Merriam-Webster's Dictionary Online* (defs. 3 & 4), *available at* https://www.merriam-webster.com/dictionary/disability, and "[i]ncapacity in the eye of the law, or created by the law * * * legal disqualification," *Oxford English Dictionary Online* (def. 3), *available at* http://www.oed.com/view/Entry/53381?redirectedFrom=disability.

     Dictionaries from the time of the enactment of Section 508's predecessor confirm that meaning.  The phrasing of Section 508 derives from the 1870 Act creating the Department of Justice, which provided that "[i]n case of a vacancy in the office of Attorney-General, or of his absence or disability, [the solicitor-general] shall have power to exercise all duties of that office."  An Act to establish the Department of Justice, ch. 150, § 2, 16 Stat. 162, 162 (1870) (later codified at U.S. Rev. Stat. 1878, § 347).  Dictionaries at the time defined the term "disability" in a fashion that encompasses recusal.  For example, the First Edition of Black's Law Dictionary defined "disability" as:

4

The want of legal ability of capacity to exercise legal rights, either special or ordinary, or to do certain acts with proper legal effect, or to enjoy certain privileges or powers of free action * * *

Disability is either general or special; the former when it incapacitates the person for the performance of all legal acts of a general class, or giving to them their ordinary legal effect; the latter when it debars him from one specific act.

Disability is also either personal or absolute; the former where it attaches to the particular person, and arises out of his status, his previous act, or his natural or juridical incapacity; the latter where it originates with a particular person, but extends also to his descendants or successors. * * *

H. Campbell Black, *A Dictionary of Law* 370-371 (1891) (italics and citations omitted).

d. *Logic.* The government's interpretation also follows as a matter of logic. Section 508 ensures that at all times an officer is heading the Department of Justice. If the Attorney General is recused, it is necessary that someone can attend to those matters and head the Department. It is inconceivable that Congress intended Section 508 to reach physical disability, but not to reach legal bases that disabled the Attorney General from participating in certain matters.

3.   The Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345, *et seq.*, does not apply here

The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties" of an office "unless a statutory provision expressly designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a) (dashes omitted).

28 U.S.C. § 508(a) is such an express statutory provision. As noted above, it provides that "[i]n case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office, and for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant to the Attorney General."). Legislative history confirms that point. *See* S. Rep. No. 250, 105th Cong., 2d Sess. 16 (1998) (FVRA committee report listing Section 508(a) as such an exception); *see also Authority of the President to Name an Acting Attorney General*, 31 Op. O.L.C. 208, 208, 2007 WL 5334854, at *1 (2007) ("The Vacancies Reform Act thus did not extinguish the authority under 28 U.S.C. § 508 by which an Acting Attorney General might serve.").

Construing the FVRA's predecessor—the Vacancy Act—the Department of Justice stated that, if vacancies are filled pursuant to Department of Justice statutes, "they are not filled pursuant to the provisions of the Vacancy Act," and the Vacancy Act's 30-day time limit was

5

"inapplicable." *Acting Officers*, 6 Op. O.L.C. at 120, 1982 WL 170676 at *2. "This position was upheld by the courts in the analogous situations where the Deputy Attorney General or Solicitor General became Acting Attorney General pursuant to 28 U.S.C. § 508." *Id.* (citing *United States v. Lucido*, 373 F.Supp. 1142, 1151 (E.D. Mich. 1974); *United States v. Halmo*, 386 F. Supp. 593, 595 (E.D. Wis. 1974)).

This too follows as a logical matter. It would make no sense for a limited "Acting" role to expire after a period of time when recusal continues indefinitely. And where the basis for acting is a recusal, no risk exists of using the Acting position to circumvent presidential nomination and confirmation by the Senate.

Very truly yours,

ROBERT S. MUELLER, III
Special Counsel

By:  /s/
_____
Michael R. Dreeben
Jeannie S. Rhee
Adam C. Jed
Aaron S.J. Zelinsky

Cc:  Counsel for Miller

Attachment A



# Department of Justice

FOR IMMEDIATE RELEASE                                                                    AG
TUESDAY, JUNE 13, 2017                                                    (202) 514-2007
WWW.JUSTICE.GOV                                                    TTY (866) 544-5309

### ATTORNEY GENERAL JEFF SESSIONS PREPARED REMARKS TO THE UNITED STATES SENATE SELECT COMMITTEE ON INTELLIGENCE

## WASHINGTON, D.C.

Thank you Chairman Burr and Ranking Member Warner for allowing me to publicly appear before the committee today.

I appreciate the Committee's critically important efforts to investigate Russian interference with our democratic process. Such interference can never be tolerated and I encourage every effort to get to the bottom of any such allegations.

As you know, the Deputy Attorney General has appointed a special counsel to investigate matters related to Russian interference in the 2016 election. I am here today to address several issues that have been specifically raised before this committee, and I appreciate the opportunity to respond to questions as fully as I am able to do so. But as I advised you, Mr. Chairman, and consistent with long-standing Department of Justice practice, I cannot and will not violate my duty to protect confidential communications with the President.

Now, let me address some issues directly: I did not have any private meetings nor do I recall any conversations with any Russian officials at the Mayflower Hotel. I did not attend any meetings at that event. Prior to the speech, I attended a reception with my staff that included at least two dozen people and President Trump. Though I do recall several conversations I had during that pre-speech reception, I do not have any recollection of meeting or talking to the Russian Ambassador or any other Russian officials. If any brief interaction occurred in passing with the Russian Ambassador during that reception, I do not remember it. After the speech, I was interviewed by the news media, which had gathered as I remember in a different room, and then I left the hotel.

But whether I ever attended a reception where the Russian Ambassador was also present is entirely beside the point of this investigation into Russian interference with the 2016 campaigns. Let me state this clearly: I have never met with or had any conversations with any Russians or any foreign officials concerning any type of interference with any campaign or election. Further, I have no knowledge of any such conversations by anyone connected to the Trump campaign. I was your colleague in this body for 20 years, and the suggestion that I

participated in any collusion or that I was aware of any collusion with the Russian government to hurt this country, which I have served with honor for over 35 years, or to undermine the integrity of our democratic process, is an appalling and detestable lie.

Relatedly, there is the assertion that I did not answer Senator Franken's question honestly at my confirmation hearing. That is false. This is how it happened. He asked me a rambling question that included dramatic, new allegations that the United States intelligence community had advised President-elect Trump that "there was a continuing exchange of information during the campaign between Trump's surrogates and intermediaries for the Russian government." I was taken aback by these explosive allegations, which he said were being reported in breaking news that day. I wanted to refute immediately any suggestion that I was a part of such an activity. I replied, "Senator Franken, I'm not aware of any of those activities. I have been called a surrogate at a time or two in that campaign and I didn't have – did not have communications with the Russians, and I'm unable to comment on it."

That was the context in which I was asked the question, and in that context, my answer was a fair and correct response to the charge as I understood it. It simply did not occur to me to go further than the context of the question and list any conversations I may have had with Russians in routine situations, as I had with numerous other foreign officials.

Please hear me now. It was only in March of this year that a reporter asked my spokesperson whether I had ever met with any Russian officials. This was the first time that question had been posed. On the same day, we provided that reporter with the information related to the meeting I and my staff had held in my Senate office with Ambassador Kislyak, as well as the brief encounter in July after a speech that I had given during the convention in Cleveland, Ohio. I also provided the reporter a list of all 25 foreign ambassador meetings I had held during 2016. In addition, I provided supplemental testimony to the Senate Judiciary Committee to explain this. I readily acknowledged these two meetings. Certainly nothing improper occurred.

Let me also explain clearly the circumstances of my recusal from the investigation into the Russian interference with the 2016 election. I was sworn in as Attorney General on Thursday, February 9th. The very next day, I met with career Department officials, including a senior ethics official, to discuss some things publicly reported in the press and that might have some bearing on the issue of recusal. From that point, February 10th, until I announced my formal recusal on March 2nd, I was never briefed on any investigative details and did not access information about the investigation; I received only the limited information that the Department's career officials determined was necessary to inform my recusal decision. As such, I have no knowledge about this investigation beyond what has been publicly reported, and I have taken no action with regard to any such investigation. On the date of my formal recusal, my Chief of Staff sent an email to the heads of the relevant departments, including by name to Director Comey of the FBI, to instruct them to inform their staffs of this recusal and to advise them not to brief me or involve me in any such matters. And in fact, they have not. Importantly, I recused myself not because of any asserted wrongdoing on my part during the campaign, but because a Department of Justice regulation, 28 CFR 45.2, required it. That regulation states, in

effect, that Department employees should not participate in investigations of a campaign if they have served as a campaign advisor.

The scope of my recusal, however, does not and cannot interfere with my ability to oversee the Department of Justice, including the FBI, which has an $8 billion budget and 35,000 employees. I presented to the President my concerns, and those of Deputy Attorney General Rod Rosenstein, about the ongoing leadership issues at the FBI as stated in my letter recommending the removal of Mr. Comey along with the Deputy Attorney General's memorandum, which have been released publicly by the White House. It is a clear statement of my views. It is absurd, frankly, to suggest that a recusal from a single specific investigation would render an Attorney General unable to manage the leadership of the various Department of Justice law enforcement components that conduct thousands of investigations.

Finally, during his testimony, Mr. Comey discussed a conversation he and I had about a meeting Mr. Comey had with the President. I am happy to share with the committee my recollection of the conversation I had with Mr. Comey. Following a routine morning threat briefing, Mr. Comey spoke to me and my Chief of Staff. While he did not provide me with any of the substance of his conversation with the President, Mr. Comey expressed concern about the proper communications protocol with the White House and with the President. I responded to his comment by agreeing that the FBI and Department of Justice needed to be careful to follow Department policies regarding appropriate contacts with the White House. Mr. Comey had served in the Department of Justice for the better part of two decades, and I was confident that Mr. Comey understood and would abide by the Department's well-established rules governing any communications with the White House about ongoing investigations. My comments encouraged him to do just that and indeed, as I understand, he did. Our Department of Justice rules on proper communication between the Department and the White House have been in place for years. Mr. Comey well knew them, I thought, and assumed correctly that he complied with them.

I will finish with this. I recused myself from any investigation into the campaigns for President, but I did not recuse myself from defending my honor against scurrilous and false allegations. At all times throughout the course of the campaign, the confirmation process, and since becoming Attorney General, I have dedicated myself to the highest standards.

The people of this country expect an honest and transparent government and that is what we are giving them. This President wants to focus on the people of this country to ensure they are treated fairly and kept safe. The Trump agenda is to improve the lives of the American people. I know some have other agendas, but that is his agenda and it is one I share.

Importantly, as Attorney General I have a responsibility to enforce the laws of this Nation, to protect this country from its enemies, and to ensure the fair administration of justice. I intend to work every day with our fine team and the superb professionals in the Department of Justice to advance the important work we have to do. These false attacks, the innuendo, and the leaks, you can be sure, will not intimidate me. In fact, these events have only strengthened my resolve to fulfill my duty to reduce crime, and to support our federal, state, and local law enforcement officers who work our streets every day. Just last week, it was reported that

overdose deaths in this country are rising faster than ever recorded.  The murder rate is up over 10 percent—the largest increase since 1968.  Together, we are telling the gangs, the cartels, the fraudsters, and the terrorists—we are coming after you.  Every one of our citizens, no matter who they are or where they live, has the right to be safe in their homes and communities.  And I will not be deterred, and I will not allow this great Department to be deterred from its vital mission.

   Thank you.

# # #
