# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In re* GRAND JURY INVESTIGATION | Grand Jury Action No. 18-34 (BAH)<br><br>Chief Judge Beryl A. Howell |

## ORDER

On May 28, 2019, Andrew Miller filed under seal a Motion to Vacate the Civil Contempt Order of August 10, 2018, to Vacate the Order of July 31, 2018, Compelling Him to Testify Before the Grand Jury, to Quash the Special Counsel Subpoena to Testify, and to Stay Imposition of the July 31 Order Pending Disposition of this Motion ("Miller's Motion"), ECF No. 54. The next day, the Court held a status hearing, which, with the parties' consent, was unsealed. At that hearing, Miller's Motion was denied, *see* Min. Order (May 29, 2019), and Miller's counsel requested that Miller's Motion be unsealed. The Court ordered the parties to propose, by the end of the day, any redactions to be made to the motion prior to unsealing, *id.*, and they did so, *see* Joint Status Report, ECF No. 55.

Upon consideration of the Joint Status Report, it is hereby

**ORDERED** that a redacted version of Miller's Motion, ECF No. 54, which is attached to this Order, be unsealed.

**SO ORDERED.**

Date: May 29, 2019

_____
BERYL A. HOWELL
Chief Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<u>IN THE MATTER OF</u>
<u>GRAND JURY INVESTIGATION</u>

<u>UNDER SEAL</u>

No. 18-GJ-34

**MOTION OF ANDREW MILLER TO VACATE THE CIVIL CONTEMPT ORDER OF AUGUST 10, 2018, TO VACATE THE ORDER OF JULY 31, 2018, COMPELLING HIM TO TESTIFY BEFORE THE GRAND JURY, TO QUASH THE SPECIAL COUNSEL SUBPOENA TO TESTIFY, AND TO STAY IMPOSITION OF THE JULY 31 ORDER PENDING DISPOSITION OF THIS MOTION**

### Introduction

Pursuant to Fed. R. Civ. Proc. 60(b) and Fed. R. Crim. Proc. 17(c)(2), Andrew Miller hereby moves to (1) vacate the civil contempt order of August 10, 2018, for failing to comply with this Court's order of July 31, 2018, compelling him to testify before the grand jury; (2) vacate the July 31 order; and (3) to quash the Special Counsel subpoena to testify before the grand jury.

As will be demonstrated, events that have transpired since the Special Counsel subpoena was first issued last May 2018, particularly the indictment of Roger Stone on January 24, 2019, and the completion of the Special Counsel's investigation on March 22, 2019, suggest that the government intends to use the grand jury for an improper purpose to conduct discovery in a pending criminal case and its use is otherwise unreasonable and inequitable.

At a minimum, this Court should ensure that the grand jury is not being abused by requiring government counsel, who are no longer with the Special Counsel's office, to explain to

1

the Court by affidavit or in a hearing on this motion, as has been done in other cases, that the proposed use of the grand jury in this matter is legitimate. If the Court is satisfied that the grand jury is not being used for an improper purpose, Andrew Miller requests that a new subpoena be issued in the name of the United States Attorney instead of the Special Counsel who has completed his investigation.

A short stay of the July 31, 2018, Order compelling Miller's testimony while this motion is briefed and adjudicated will not cause undue prejudice to the government inasmuch as it did not request the court of appeals to expedite the appeal in this case nor did it seek to expedite the issuance of the mandate during the 45 days after the decision was rendered on February 26, 2019.

### Chronology of Events

1. On or about May 9, 2018, Andrew Miller, a former part-time aide to Roger Stone during the 2016 Republican National Committee convention in July 2016, who handled Mr. Stone's media schedule appearances, voluntarily agreed to be interviewed without counsel by two FBI agents who appeared without notice at his mother's home in St. Louis, Missouri.

2. For approximately two hours, Mr. Miller answered all their questions, including questions about his work for Mr. Stone, his knowledge about individuals who had worked with Mr. Stone, and his knowledge of Mr. Stone's alleged connection to WikiLeaks, Julian Assange, and Guccifer 2.0, which was limited to published press accounts. At the end of the interview, the FBI gave Mr. Miller a subpoena from the Special Counsel for any documents related to Mr. Stone and to testify before the Special Counsel grand jury.

3. On June 18, 2018, this Court held a hearing on Mr. Miller's motion to quash the subpoena for overbreadth. ECF No. 16. That hearing was originally sealed but was later

unsealed by the Court.  At the hearing, the parties agreed, with court approval, to limit the document search to any documents from June 2015 related to Mr. Stone and WikiLeaks, Julian Assange, and Guccifer 2.0.  The parties agreed that those documents would be produced on June 25, 2018.  By Minute Order, dated June 18, the Court further ordered Mr. Miller to testify before the Grand Jury on June 29, 2018.

4.  All such documents were turned over to prosecutors on June 25, 2018.  The subject of Mr. Miller's grand jury testimony would presumably cover the same subject matter as the FBI interview and the documents requested, even though, as noted, Mr. Miller's knowledge of Mr. Stone's connection to WikiLeaks, Julian Assange, and Guccifer 2.0, was limited to published press accounts.

5.  On June 28, 2018, Mr. Miller filed a motion to quash the grand jury subpoena, ECF No. 10,  on grounds that it was invalid because it was issued by Special Counsel Robert S. Mueller, III, who, Mr. Miller argued, was not constitutionally appointed under the Appointments Clause and that his appointment was not statutorily authorized.

6.  On July 18, 2018, this Court held a hearing on the motion to quash.

7.  On July 31, 2018, this Court denied the motion and ordered Mr. Miller to appear before the grand jury at the earliest date, which was August 10, 2018.

8.  On August 9, 2018, Mr. Miller filed a motion to be held in contempt for not appearing before the grand jury the next day so that he could seek an appeal of the Court's order denying his motion to quash the subpoena.

9.  On August 10, 2018, the Court granted the motion and found him in civil contempt of the Court's July 31, 2018 order to appear before the grand jury, but stayed the order until August

14 unless a Notice of Appeal was filed or the witness and the government agreed to an alternative arrangement. The order was originally sealed but later unsealed.

10. On August 13, Mr. Miller filed the notice of appeal of the contempt order to the U.S. Court of Appeals for the District of Columbia Circuit.

11. After briefing by the parties, the Court of Appeals held oral argument on November 8, 2018, and requested post-hearing supplemental briefing by the parties.

12. While the appeal was pending, Roger Stone was indicted on January 24, 2019. *United States v. Roger Stone,* 19-cr-18 (ABJ) (D.D.C.). He was charged with providing false testimony to Congress regarding his contacts with WikiLeaks, Julian Assange, and other witnesses, but there were no charges for colluding or coordinating with Russia regarding that country's interference with the 2016 campaign or the hacking of Hillary Clinton and DNC emails.

13. Later that same day, undersigned counsel for Mr. Miller inquired of the Special Counsel whether, in light of the indictment, the grand jury still needed his testimony regarding the subject matter (if it ever did) and whether the court of appeals should be so advised with a FRAP Rule 28(j) letter. In particular, counsel pointed out the Justice Department's policy[1] and relevant case law regarding the proper use of the grand jury post-indictment:

> U.S. Attorney Manual **9-11.120 - Power of a Grand Jury Limited by Its Function**
>
> The grand jury's power, although expansive, is limited by its function toward possible return of an indictment. *Costello v. United States*, 350 U.S. 359, 362 (1956). Accordingly, the grand jury cannot be used solely to obtain additional evidence against a defendant who has already been indicted. *United States v. Woods*, 544 F.2d 242, 250 (6th Cir. 1976), *cert. denied sub nom.*, *Hurt v. United States*, 429 U.S. 1062 (1977). Nor can

---

[1] The Special Counsel is required to comply with all Department of Justice policies and directives. 28 C.F.R. 600.7(a).

the grand jury be used solely for pre-trial discovery or trial preparation. *United States v. Star*, 470 F.2d 1214 (9th Cir. 1972). After indictment, the grand jury may be used if its investigation is related to a superseding indictment of additional defendants or additional crimes by an indicted defendant. *In re Grand Jury Subpoena Duces Tecum, Dated January 2, 1985*, 767 F.2d 26, 29-30 (2d Cir. 1985); *In re Grand Jury Proceedings*, 586 F.2d 724 (9th Cir. 1978).

14. Since the subpoena issued to Mr. Miller was for the purpose of obtaining evidence related to Mr. Stone's connection with WikiLeaks, Julian Assange, and Guccifer 2.0, it would appear that the Special Counsel would no longer need Mr. Miller's testimony regarding that subject matter and that the use of the grand jury at this point would be improper. Nevertheless, the Special Counsel's office advised Miller's counsel that it believed the case to be a live controversy since the grand jury was still active, though it was not apparent whether the grand jury or its foreperson was consulted as to any continued interest in hearing Mr. Miller's testimony.

15. On February 26, 2019, the court of appeals issued its judgment and opinion affirming this Court's denial of Mr. Miller's motion to quash the subpoena. *In re: Grand Jury Investigation*, 916 F.3d 1047 (D.C. Cir. 2019).

16. The court of appeals' order stayed the issuance of the mandate, as is the usual practice under Fed. R. App. P. 41(b) and D.C. Cir. Rule 41, until seven days after the time for the filing a petition for rehearing had expired or after disposition of any timely filed petition (45 days from the February 26 decision, or April 12). The order further specified that any party had the right "to move for expedited issuance of the mandate for good cause shown." Exhibit 1. Notably, for the next 45 days, the Special Counsel declined to exercise that right, presumably because it did not have the requisite "good cause" or a need to require Mr. Miller's grand jury testimony.

17.  On March 22, 2019, Special Counsel submitted his final report to Attorney General Barr pursuant to the Special Counsel regulations, 28 C.F.R. 600.8(c), concluding his investigation, explaining his prosecutions and declinations, and finding that no conspiracy or coordination took place between the Trump campaign or any aides associated with the campaign and Russia regarding interference with the 2016 campaign or hacking the emails of Hillary Clinton or the DNC.[2]  *Report On The Investigation Into Russian Interference In The 2016 Presidential Election* (March 2019) (Mueller Report).  No further indictments are expected. According to Justice Department spokesperson Kerri Kupec, "The investigation is complete."[3]

18.  On April 12, 2019, Miller filed a timely petition for rehearing and rehearing *en banc* with a suggestion of mootness.

19.  On April 29, 2019, the court of appeals denied the petition without opinion and without requesting the government to file a response.

20.  On May 6, 2019, Miller filed a timely motion to stay the mandate for 30 days in order to seek Supreme Court review.

21.  On May 16, 2019, the government filed an opposition to the motion to stay the mandate, asserting that it "has a continued need for [Miller's] testimony, which concerns an

---

[2] See Attorney General William P. Barr Letter to Congress, March 24, 2019. https://www.nytimes.com/interactive/2019/03/24/us/politics/barr-letter-mueller-report.html?module=inline#g-page-1.

[3] Devlin Barrett and Matt Zapotosky, *"Mueller report sent to attorney general, signaling his Russia investigation has ended"* Washington Post (Mar. 22, 2019). https://www.washingtonpost.com/world/national-security/mueller-report-sent-to-attorney-general-signaling-his-russia-investigation-has-ended/2019/03/22/b061d8fa-323e-11e9-813a-0ab2f17e305b_story.html?utm_term=.6d83a9475bca

ongoing investigation that is now being handled by the U.S. Attorney's Office for the District of Columbia." (Govt. Op. at 18).

22. On May 21, 2019, the court of appeals denied the motion to stay the mandate and ordered the Clerk to issue it today, May 28, 2019, which it did. Accordingly, this motion is timely.

## A. THE SUBPOENA SHOULD BE QUASHED SINCE IT APPEARS THAT THE GRAND JURY WILL BE IMPROPERLY USED TO GATHER EVIDENCE FOR A PENDING CRIMINAL PROCEEDING

It is universally recognized that it is improper to use the grand jury for the purpose of preparing an already pending indictment for trial. The grand jury's role is to investigate possible criminal conduct in order to determine whether to return an indictment; it is not part of that role for the grand jury to conduct discovery in a pending criminal case. Therefore, at the time the indictment is returned, the grand jury's investigative role is ended, and the rules of pretrial discovery take effect to govern the extent to which the parties may use the legal process to obtain information about the case.

Grand Jury Law & Practice, 2d, Chapter 9: *Prosecutorial Misconduct, Abuse of the Grand Jury, and Judicial Review*, section 9:16 **Gathering evidence for pending criminal proceeding,** at 9-95 (hereinafter Grand Jury Law) (footnotes citing cases omitted).

This general rule is also reflected in the U.S. Attorney Manual regarding the proper use of the grand jury:

U.S. Attorney Manual **9-11.120 - Power of a Grand Jury Limited by Its Function**

The grand jury's power, although expansive, is limited by its function toward possible return of an indictment. *Costello v. United States*, 350 U.S. 359, 362 (1956). Accordingly, the grand jury cannot be used solely to obtain additional evidence against a defendant who has already been indicted. *United States v. Woods*, 544 F.2d 242, 250 (6th Cir. 1976), *cert. denied sub nom.*, *Hurt v. United States*, 429 U.S. 1062 (1977). Nor can the grand jury be used solely for pre-trial discovery or trial preparation. *United States v. Star*, 470 F.2d 1214 (9th Cir. 1972). After indictment, the grand jury may be used if its investigation is related to a superseding indictment of additional defendants or additional crimes by an indicted defendant. *In re Grand Jury Subpoena Duces Tecum, Dated January 2, 1985*, 767 F.2d 26, 29-30 (2d Cir. 1985); *In re Grand Jury Proceedings*, 586 F.2d 724 (9th Cir. 1978).

"[T]he question of whether the prosecutor is employing the grand jury to gather evidence for a pending prosecution is not a factual determination of intent subject to the clearly erroneous standard, but rather the application of the legal standard intended to ensure the independence of the grand jury." Grand Jury Law, 9:16 at 9-102 (cases cited omitted). As the First Circuit described the standard of review:

> Claims of grand jury abuse raise a unique set of concerns. The relevant inquiry, strictly speaking, is neither a pure question of fact nor a pure question of law. *In re Grand Jury Proceedings (Fernandez Diamante),* 814 F.2d 61, 71 (1st Cir.1987). To the contrary, the inquiry most often comprises a hybrid in that it typically involves an "application of a legal standard designed to ensure that the grand jury, a body operating peculiarly under court supervision, is not misused by the prosecutor...." *Id.* (quoting *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels),* 767 F.2d 26, 29 (2d Cir.1985)).

> Given this reality, appellate tribunals have crafted an intermediate standard of review for evaluating district court orders accepting or rejecting claims of grand jury abuse. Under that standard, we accord respect to the lower court's findings, but scrutinize them somewhat less deferentially than we would if either the traditional "abuse of discretion" or "clearly erroneous" rubric applied. *See United States v.Leung,* 40 F.3d 577, 581 (2d Cir.1994); *Fernandez Diamante,* 814 F.2d at 71. This intermediate level of appellate scrutiny is akin to what we have in other contexts termed "independent review." *E.g., United States v. Tortora,* 922 F.2d 880, 882–83 (1st Cir.1990) (describing independent review as "an intermediate level of scrutiny, more rigorous than the abuse-of-discretion or clear-error standards, but stopping short of plenary or *de novo* review," and deeming such review appropriate for appellate oversight of pretrial detention orders).

*United States v. Flemmi,* 245 F.3d 24, 27-28 (1st Cir. 2001).

The government's claim that it "has a continued need for [Miller's] testimony, which concerns an ongoing investigation that is now being handled by the U.S. Attorney's Office for the District of Columbia" is questionable for several reasons.

*First*, it was clear from the outset, that the Special Counsel wanted Mr. Miller to testify last year regarding his knowledge of Roger Stone's actions during the 2016 election and his

involvement in WikiLeaks, Julian Assange, and the hacking of Hillary Clinton's and the DNC's emails and any collusion with Russia. But Mr. Stone was indicted on January 24, 2019, by the Special Counsel, in regard to that matter and that case is in pre-trial discovery.

*Second,* as of March 22, 2019, the Special Counsel's investigation has ended and he has submitted his final report. *See* Mueller Report. In his report, the Special Counsel noted there were 11 matters that were 'not fully concluded" and "transferred responsibility for those matters to other components of the Department of Justice and the FBI." Mueller Report, Appx D-1 (Exhibit 2). One such transferred case (listed in alphabetical order) is Case No. 10, United States v. Roger Stone. *Id.* Under the case caption is the parenthetical "**(Awaiting trial)**". This designation is in sharp contrast to Case Nos. 9 and 11, whose case names are redacted but whose parenthetical designation is "**(Investigation ongoing)**". *Id.*

Accordingly, the government's need for Mr. Miller's testimony for an alleged "ongoing investigation" with respect to Roger Stone is questionable since that transferred case is 'awaiting trial" and is not an "ongoing investigation." Either the prosecutor (1) no longer needs Mr. Miller's testimony as it did a year ago, (2) is improperly seeking evidence in the pending Stone indictment, or (3) is investigating other possible crimes committed by Mr. Stone. But if there is an "ongoing investigation" for which Mr. Miller's testimony is needed, Case No. 9 in the Mueller Report makes clear in the unredacted section that the "ongoing investigation" deals with matters arising from the investigation of Paul Manafort and Richard Gates connection with Ukrainian officials, an investigation clearly unrelated to Mr. Miller's work with Roger Stone. Appx D-2 (Exhibit 2). Case No. 11, which case name is also redacted, has no description of the case. Appx D-3 (Exhibit 2). But based on the size of the redaction, it appears that it has been transferred to the U.S. Attorney's Office for the District of Columbia, and that the defendant's

name is likely not Roger Stone based on the size of the redaction, although it is someone whose last name alphabetically follows Mr. Stone's last name.

So while the prosecutor may use the grand jury to obtain evidence about other possible defendants, that scenario is implausible here since Special Assistant U.S. Attorney Aaron Zelinsky (formerly with the Special Counsel's Office) requested in an email on May 6, 2019, to counsel for Miller to schedule a proffer interview with Mr. Miller "related to ███████████ ███████████████████" to first determine whether he needs to go before the grand jury so as not to "needlessly expend Grand Jury resources or inconvenience the witness…." *See* May 6, 2019 email from Mr. Zelinsky to Mr. Kamenar (Exhibit 3). This suggests that the prosecutor is seeking evidence related ████████████████████████████.

Mr. Miller's counsel suggested to Mr. Zelinsky that because of the burden on him to travel to Washington, D.C. from St. Louis, missing up to two days from his job (he has no paid leave days) to attend a proffer interview with the prosecutor, and possibly be required to return again for another two days for the grand jury, a telephonic interview might be appropriate inasmuch on information and belief, such telephonic interviews were conducted with other witnesses, even with those who live in the local area.   Mr. Zelinsky rejected this reasonable suggestion and insisted on an in-person proffer interview.  *See* May 6, 2019 email from Zelinsky to Kamenar (Exhibit 3).  In reply, counsel for Mr. Miller advised Mr. Zelinsky on Friday, May 24, 2019, that it continued to believe the use of the grand jury was improper as was argued in the petition for rehearing, and that it may be appropriate for this Court to revisit this matter.  Exhibit 3.

Also troubling was the government's representation in its opposition to the motion to stay the mandate in the court of appeals that a "two-hour, unsworn interview with FBI agents in May

2018 is not an appropriate substitute" for a grand jury testimony. Govt. Opp. at 18. Notably, the government did *not* claim that the information gleaned from that interview was insufficient in order to determine whether Mr. Miller will be needed to appear before the grand jury. Moreover, a proffer meeting, which Mr. Zelinsky proposed, is also an "unsworn interview." And while it is true that the interview with the FBI or a prosecutor in a proffer meeting is "unsworn," a witness in either case is subject to criminal prosecution for false statements under 18 U.S.C. 1001. Indeed, such false statements have been prosecuted by the Special Counsel. Thus, the insistence to have the witness provide sworn testimony before the grand jury instead of relying on Miller's unsworn statements to the FBI, raises the specter that the government does not believe Mr. Miller was telling the truth to the FBI. Accordingly, since there does not appear to be an "ongoing investigation" of Roger Stone who has been indicted, an unlawful perjury trap may be in store. *See generally* Grand Jury Law, section 9:17 **Inducing witness to commit perjury.**

While it is true that courts have held that grand jury proceedings are entitled to a presumption of regularity, the presumption is rebuttable. "The moving party has the initial task of demonstrating to the Court that he has some valid objection to compliance. * * * The trial court need inquire into the relevance of the subpoenaed materials only after the moving party has made this initial showing." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 305 (1991) (Stevens, J., concurring in part and concurring in the judgment). Miller submits that he has made a "valid objection to compliance" and that the government should be required to show by affidavit or otherwise, that the grand jury is not being misused to gather pre-trial discovery in the pending Stone case.

"The question of a grand jury's dominant purpose is not the typical question of historical fact nor even the typical inquiry as to the state of mind of a witness or a party. It is the

application of a legal standard designed to ensure that the grand jury, a body operating peculiarly under court supervision, *see In re Grand Jury Investigation of Cuisinarts, Inc.,* 665 F.2d 24, 31 (2d Cir.1981), *cert. denied,* 460 U.S. 1068 (1983), is not misused by the prosecutor for trial preparation. In applying that standard, we therefore must give more scrutiny than would be appropriate under the "clearly erroneous" standard." *In re: Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels),* 767 F.2d 26, 30 (2d Cir. 1985); *United States v. Flemmi,* 245 F.3d 24, 27-28 (1st Cir. 2001).

Accordingly, Andrew Miller requests that the grand jury subpoena issued by the Special Counsel last year be quashed: "Where a violation is found before the grand jury has heard the evidence in question, the remedy is simple: the subpoena for the improperly sought evidence is quashed." Grand Jury Law, section 9:16 at 9-102.

### B.  THE CIVIL CONTEMPT ORDER OF AUGUST 10, 2018, SHOULD BE VACATED UNDER FED. R. CIV. PROC. 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure provides in pertinent part:

(b) **Grounds for Relief form a Final Judgment, Order, or Proceeding.**
On Motion and just terms, the court may relieve a party…from a final judgment, order, or proceeding for the following reasons:
****
      (5) *** applying [the Order] prospectively is no longer equitable; or
      (6) any other reason that justifies relief.

Several factors shape the framework of the court's consideration of a 60(b) motion, including (1) whether there are intervening equities that would make it inequitable to grant relief, and (2) any other factors relevant to the justice of the judgment under attack. *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350. 355-56 (5th Cir. 1993). Miller asserts that for all the reasons, both legal and equitable, presented in this motion, *supra,* for quashing the subpoena, the civil contempt order should be vacated.

12

## CONCLUSION

For the foregoing reasons, Andrew Miller requests that this Court (1) vacate the civil contempt order of August 10, 2018, imposed on him for failing to comply with this Court's order of July 31, 2018, compelling him to testify before the grand jury; (2) vacate the July 31 order; and (3) quash the Special Counsel subpoena to testify before the grand jury.

Date:  May 28, 2019      Respectfully submitted,

              */s/ Paul D. Kamenar*
              PAUL D. KAMENAR
              1629 K STREET, N.W.
              SUITE 300
              WASHINGTON, DC  20006
              (301) 257-9435
              paul.kamenar@gmail.com

              *Counsel for Andrew Miller*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of May, 2019, the foregoing MOTION OF ANDREW MILLER TO VACATE THE CIVIL CONTEMPT ORDER OF AUGUST 10, 2018, TO VACATE THE ORDER OF JULY 31, 2018, COMPELLING HIM TO TESTIFY BEFORE THE GRAND JURY, TO QUASH THE SPECIAL COUNSEL SUBPOENA TO TESTIFY, EXHIBITS THERETO, AND PROPOSED ORDER  were served via this Court's Electronic Case Filing System upon all parties of record.

      */s/Paul D. Kamenar*

EXHIBIT 1

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 18-3052**                                        **September Term, 2018**

**1:18-gj-00034-BAH**

**Filed On: February 26, 2019** [1774856]

In re: Grand Jury Investigation,

## O R D E R

It is **ORDERED**, on the court's own motion, that the Clerk withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing or petition for rehearing en banc. <u>See</u> Fed. R. App. P. 41(b); D.C. Cir. Rule 41. This instruction to the Clerk is without prejudice to the right of any party to move for expedited issuance of the mandate for good cause shown.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:      /s/
Ken R. Meadows
Deputy Clerk

EXHIBIT 2

APPENDIX D

SPECIAL COUNSEL'S OFFICE TRANSFERRED, REFERRED, AND COMPLETED CASES

This appendix identifies matters transferred or referred by the Special Counsel's Office, as well as cases prosecuted by the Office that are now completed.

### A. Transfers

The Special Counsel's Office has concluded its investigation into links and coordination between the Russian government and individuals associated with the Trump Campaign. Certain matters assigned to the Office by the Acting Attorney General have not fully concluded as of the date of this report. After consultation with the Office of the Deputy Attorney General, the Office has transferred responsibility for those matters to other components of the Department of Justice and the FBI. Those transfers include:

1. United States v. Bijan Rafiekian and Kamil Ekim Alptekin

   *U.S. Attorney's Office for the Eastern District of Virginia*
   (Awaiting trial)

The Acting Attorney General authorized the Special Counsel to investigate, among other things, possible criminal conduct by Michael Flynn in acting as an unregistered agent for the Government of Turkey. *See* August 2, 2017 Memorandum from Rod J. Rosenstein to Robert S. Mueller, III. The Acting Attorney General later confirmed the Special Counsel's authority to investigate Rafiekian and Alptekin because they "may have been jointly involved" with Flynn in FARA-related crimes. *See* October 20, 2017 Memorandum from Associate Deputy Attorney General Scott Schools to Deputy Attorney General Rod J. Rosenstein.

On December 1, 2017, Flynn pleaded guilty to an Information charging him with making false statements to the FBI about his contacts with the Russian ambassador to the United States. As part of that plea, Flynn agreed to a Statement of the Offense in which he acknowledged that the Foreign Agents Registration Act (FARA) documents he filed on March 7, 2017 "contained materially false statements and omissions." Flynn's plea occurred before the Special Counsel had made a final decision on whether to charge Rafiekian or Alptekin. On March 27, 2018, after consultation with the Office of the Deputy Attorney General, the Special Counsel's Office referred the investigation of Rafiekian and Alptekin to the National Security Division (NSD) for any action it deemed appropriate. The Special Counsel's Office determined the referral was appropriate because the investigation of Flynn had been completed, and that investigation had provided the rationale for the Office's investigation of Rafiekian and Alptekin. At NSD's request, the Eastern District of Virginia continued the investigation of Rafiekian and Alptekin.

2. United States v. Michael Flynn

   *U.S. Attorney's Office for the District of Columbia*
   (Awaiting sentencing)

3. <u>United States v. Richard Gates</u>

   *U.S. Attorney's Office for the District of Columbia*
   (Awaiting sentencing)

4. <u>United States v. Internet Research Agency, et al.</u> (Russian Social Media Campaign)

   *U.S. Attorney's Office for the District of Columbia*
   *National Security Division*
   (Post-indictment, pre-arrest & pre-trial[1])

5. <u>United States v. Konstantin Kilimnik</u>

   *U.S. Attorney's Office for the District of Columbia*
   (Post-indictment, pre-arrest)

6. <u>United States v. Paul Manafort</u>

   *U.S. Attorney's Office for the District of Columbia*
   *U.S. Attorney's Office for the Eastern District of Virginia*
   (Post-conviction)

7. <u>United States v. Viktor Netyksho, et al.</u> (Russian Hacking Operations)

   *U.S. Attorney's Office for the Western District of Pennsylvania*
   *National Security Division*
   (Post-indictment, pre-arrest)

8. <u>United States v. William Samuel Patten</u>

   *U.S. Attorney's Office for the District of Columbia*
   (Awaiting sentencing)

The Acting Attorney General authorized the Special Counsel to investigate aspects of Patten's conduct that related to another matter that was under investigation by the Office. The investigation uncovered evidence of a crime; the U.S. Attorney's Office for the District of Columbia handled the prosecution of Patten.

9. <span style="background:black;color:white">Harm to Ongoing Matter</span>

   ███████████████████████

   (Investigation ongoing)

The Acting Attorney General authorized the Special Counsel to investigate, among other things, crime or crimes arising out of payments Paul Manafort received from the Ukrainian government before and during the tenure of President Viktor Yanukovych. *See* August 2, 2017 Memorandum from Rod J. Rosenstein to Robert S. Mueller, III. The Acting Attorney General

---

[1] One defendant, Concord Management & Consulting LLC, appeared through counsel and is in pre-trial litigation.

U.S. Department of Justice

~~Attorney Work Product // May Contain Material Protected Under Fed. R. Crim. P. 6(e)~~

later confirmed the Special Counsel's authority to investigate [Harm to Ongoing Matter]

On October 27, 2017, Paul Manafort and Richard Gates were charged in the District of Columbia with various crimes (including FARA) in connection with work they performed for Russia-backed political entities in Ukraine. On February 22, 2018, Manafort and Gates were charged in the Eastern District of Virginia with various other crimes in connection with the payments they received for work performed for Russia-backed political entities in Ukraine. During the course of its [HOM], the Special Counsel's Office developed substantial evidence with respect to individuals and entities that wer [Harm to Ongoing Matter]

[Harm to Ongoing Matter] .[2] On February 23, 2018, Gates pleaded guilty in the District of Columbia to a multi-object conspiracy and to making false statements; the remaining charges against Gates were dismissed.[3] Thereafter, in consultation with the Office of the Deputy Attorney General, the Special Counsel's Office closed the [Harm to Ongoing Matter] and referred them [HOM] for further investigation as it deemed appropriate. The Office based its decision to close those matters on its mandate, the indictments of Manafort, Gates's plea, and its determination as to how best to allocate its resources, among other reasons; [Harm to Ongoing Matter] At[Harm to Ongoing Matter] continued the investigation of those closed matters.

10. United States v. Roger Stone

   *U.S. Attorney's Office for the District of Columbia*
   (Awaiting trial)

11. [Harm to Ongoing Matter]

   (Investigation ongoing)

B. Referrals

During the course of the investigation, the Office periodically identified evidence of potential criminal activity that was outside the scope of the Special Counsel's jurisdiction established by the Acting Attorney General. After consultation with the Office of the Deputy Attorney General, the Office referred that evidence to appropriate law enforcement authorities, principally other components of the Department of Justice and the FBI. Those referrals, listed

---

[2] [Harm to Ongoing Matter]

[3] Manafort was ultimately convicted at trial in the Eastern District of Virginia and pleaded guilty in the District of Columbia. *See* Vol. I, Section IV.A.8. The trial and plea happened after the transfer decision described here.

EXHIBIT 3

**From:** pdkamenar <pdkamenar@aol.com>
**To:** Aaron.Zelinsky <Aaron.Zelinsky@usdoj.gov>
**Cc:** Jonathan.Kravis3 <Jonathan.Kravis3@usdoj.gov>; Michael.Marando <Michael.Marando@usdoj.gov>
**Subject:** Re: In re: Grand Jury Investigation 18-3052
**Date:** Fri, May 24, 2019 3:08 pm

---

Dear Aaron,
Mr. Miller is concerned that your proposal for a proffer meeting which may last up to four hours may also require him to return to DC and appear before the grand jury.

Missing work (he's self-employed and thus has no paid leave days) for at least two days counting travel for the proffer meeting and two more if he has to return for the grand jury, will be costly and burdensome to him. And while we appreciate your concern to minimize that expense as well as Grand Jury resources, there is no guarantee he won't be asked to appear before the Grand Jury.

We still maintain as we did in the court of appeals that using the Grand Jury to obtain evidence and discovery about Roger Stone from Mr. Miller at this point is inconsistent with DoJ policy and case law.

We think it may be appropriate for Judge Howell to revisit this matter in light of events over the last year once this case is remanded next week from the court of appeals. Such a short pause should not unduly prejudice the government and perhaps some other satisfactory arrangement can be made to minimize the costs and expense to the parties, the court, and the grand jury.

In the meantime, I hope you enjoy the Memorial Day weekend.

Best,
Paul


-----Original Message-----
From: Zelinsky, Aaron (USAMD) <Aaron.Zelinsky@usdoj.gov>
To: Paul Kamenar <pdkamenar@aol.com>
Cc: Kravis, Jonathan (USADC) <Jonathan.Kravis3@usdoj.gov>; Marando, Michael (USADC)
<Michael.Marando@usdoj.gov>
Sent: Wed, May 22, 2019 12:00 pm
Subject: RE: In re: Grand Jury Investigation 18-3052

Paul,

Thanks for the quick response.

Best,
Aaron

**From:** Paul Kamenar <pdkamenar@aol.com>
**Sent:** Wednesday, May 22, 2019 12:00 PM
**To:** Zelinsky, Aaron (USAMD) <AZelinsky@usa.doj.gov>
**Cc:** Kravis, Jonathan (USADC) <JKravis1@usa.doj.gov>; Marando, Michael (USADC)
<MMarando@usa.doj.gov>
**Subject:** Re: In re: Grand Jury Investigation 18-3052

Dear Aaron,
Need to discuss your proposal and other options with Mr. Miller after his work today and hope to get back to you tomorrow.

Best,
Paul

Sent from iPhone

On May 22, 2019, at 9:36 AM, Zelinsky, Aaron (USAMD) <Aaron.Zelinsky@usdoj.gov> wrote:

> Dear Paul,
> We continue to seek Mr. Miller's testimony for an ongoing investigation. Please let me know your response to the proposal below.
>
> Best,
> Aaron
>
>> **From:** Zelinsky, Aaron (USAMD) <AZelinsky@usa.doj.gov>
>> **Sent:** Monday, May 6, 2019 9:55 PM
>> **To:** pdkamenar@aol.com
>> **Cc:** Kravis, Jonathan (USADC) <JKravis1@usa.doj.gov>; Marando, Michael (USADC) <MMarando@usa.doj.gov>
>> **Subject:** Re: In re: Grand Jury Investigation 18-3052
>>
>> Dear Paul,
>>
>> We propose a voluntary meeting with Mr. Miller prior to any Grand Jury testimony as is the usual practice, and we estimate that meeting should take no more than four hours. The proffer would cover ███████████████████████ We can also provide a standard proffer letter. After the meeting, we will determine if his testimony before the Grand Jury is necessary. We do not seek to needlessly expend Grand Jury resources or inconvenience the witness, and will weigh the concerns you have expressed in determining whether his testimony is required. Any proffer would have to be in person in Washington. The government will of course provide travel and lodging for Mr. Miller.
>>
>> Best,
>> Aaron
>>
>> Sent from my iPhone
>>
>>> On May 3, 2019, at 3:26 PM, "pdkamenar@aol.com" <pdkamenar@aol.com> wrote:
>>>
>>> Dear Aaron,
>>>
>>> I have discussed this matter with Mr. Miller and while we are disappointed with your response, we have a few follow up questions to clarify:
>>>
>>> 1. You state that you "continue to seek Mr. Miller's testimony before the Grand Jury for an ongoing investigation."
>>> But you are also proposing to meet with Mr. Miller "in preparation for any potential Grand Jury testimony."

Is it your position that Mr. Miller will be needed for the grand jury regardless if he meets with the government? Or is the
decision to require his appearance before the grand jury solely in your discretion?  If so, would he have to come back to DC a second time for
any grand jury appearance after any such meeting if you so demand?

2.  Last year when we were discussing a proffer meeting, you indicated that such a meeting would last approx. 5 hours or so.  Is that still your estimation?

3.  Regarding the subject matter of any meeting or grand jury appearance, can you confirm that it will be limited to the scope of the document request you agreed to limit,
namely, any information that Mr. Miller knows about Roger Stone's connection to WikiLeaks, Julian Assange, Guccifer 2.0, Russia?  If not, what other subject areas of inquiry are the government interested in?

4.  Would your request for an interview be satisfied with a Skype interview instead of just a telephonic one, even though after such an interview, you may still want Mr. Miller to appear before the grand jury?

We would appreciate a prompt reply to these questions.

Best,
Paul


-----Original Message-----
From: Zelinsky, Aaron (USAMD) <Aaron.Zelinsky@usdoj.gov>
To: pdkamenar@aol.com <pdkamenar@aol.com>
Cc: Kravis, Jonathan (USADC) <Jonathan.Kravis3@usdoj.gov>; Marando, Michael (USADC) <Michael.Marando@usdoj.gov>
Sent: Fri, May 3, 2019 10:34 am
Subject: RE: In re: Grand Jury Investigation 18-3052

Dear Paul,
As previously proposed, we can meet with Mr. Miller subject to a proffer agreement and in preparation for any potential Grand Jury testimony.  We can arrange for Mr. Miller's transportation to DC as soon as possible, and, if you agree, we can jointly notify Chief Judge Howell of our plans and request that the Court's contempt order be stayed to give Mr. Miller time to meet with us.  As previously stated, we continue to seek Mr. Miller's testimony before the Grand Jury for an ongoing investigation.
Best,
Aaron
From: pdkamenar@aol.com <pdkamenar@aol.com>
Sent: Wednesday, May 1, 2019 8:08 PM
To: Zelinsky, Aaron (USAMD) <AZelinsky@usa.doj.gov>
Cc: Kravis, Jonathan (USADC) <JKravis1@usa.doj.gov>; Marando, Michael (USADC) <MMarando@usa.doj.gov>
Subject: Fwd: In re: Grand Jury Investigation 18-3052

Aaron-