UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
IN RE:                         )
Grand Jury Investigation.      )  Case No. 18-34
United States of America,      )
Interested Party.              )  11:00 a.m.
                               )  May 29, 2019
Andrew Miller, Material Witness. )  Washington, D.C.
 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF PROCEEDINGS**
**WITH REDACTIONS**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**


<u>**APPEARANCES**</u>**:**


FOR THE GOVERNMENT: AARON J. ZELINSKI
                    JONATHAN I. KRAVIS
                    U.S. DEPARTMENT OF JUSTICE
                    555 Fourth Street, NW
                    Washington, DC 20530
                    (410) 209-4928
                    Email: Aaron.Zelinsky@usdoj.gov


FOR THE WITNESS:    PAUL D. KAMENAR
                    1629 K Street, N.W., Suite 300
                    Washington, D.C. 20006
                    (202) 603-5397
                    Email: Paul.kamenar@gmail.com


ALSO PRESENT:       ANDREW MILLER (Via Telephonically)


Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter
                    U.S. Courthouse
                    Washington, D.C.  20001


Proceedings reported by machine shorthand,
transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

1

2          THE DEPUTY:  Matter before the Court, grand jury

3    matter 18-34, in regards to a grand jury investigation.

4    United States of America, interested party; Andrew Miller,

5    material witness.

6          Counsel, please come forward and identify

7    yourselves for the record.

8          MR. ZELINSKY:  Good morning, Your Honor.

9    Aaron Zelinsky on behalf of the United States.  With me at

10   counsel's table is United States Attorney Jonathan Kravis.

11         THE COURT:  Good morning.

12         MR. KAMENAR:  Good morning, Your Honor.

13   Paul Kamenar, counsel for Andrew Miller, who is going to be

14   available by telephone as was agreed.

15         THE COURT:  Is he on the telephone now?

16         MR. MILLER:  Good morning, Your Honor.

17   Andrew Miller here on the phone.

18         THE COURT:  My order said specifically that he was

19   supposed to be here, and you were supposed to make all

20   efforts to get him here.  Why isn't he present?

21         MR. KAMENAR:  Your Honor, when we got that order,

22   it was in the afternoon.  I was talking to --

23         THE COURT:  We've known for a week that the

24   mandate was coming down yesterday.  The parties didn't tell

25   me anything about what they had planned to do when the

 1    mandate came down.  Even though I see from the submission

 2    you made last night, Mr. Kamenar, you have all been talking

 3    about trying to get ahead of this and have some kind of

 4    agreement as to what was supposed to happen when the mandate

 5    came down.  You knew that for over a week; the parties were

 6    silent.

 7          As soon as the mandate comes down, I have an order

 8    holding Mr. Miller in contempt -- to put him in jail --

 9    unless he has agreed to testify.  He is not here.

10          Why isn't he here?

11          MR. KAMENAR:  Your Honor --

12          THE COURT:  Getting an agreement from Mr. Zelinsky

13    is not the same and does not excuse you from not complying

14    with the Court's order.

15          MR. KAMENAR:  Your Honor, the Court's order

16    required him to appear before the grand jury at the next

17    available date.

18          THE COURT:  No.  My order -- my minute order

19    setting up this status conference was for him to be present

20    here today.

21          MR. KAMENAR:  Your Honor, I apologize in terms of

22    the timing.

23          THE COURT:  He is not in Japan, is he?

24          MR. KAMENAR:  No.  He is in St. Louis.

25          THE COURT:  That's not that far away.

1          MR. KAMENAR:  Right.  But he was at work and

2    ordered to get on a plane in the morning.  It was just --

3    usually, when there is an arrangement, we work out with

4    Mr. Zelinsky's travel office.  I wasn't sure whether that --

5    when I talked to the deputy clerk and said could that be

6    arranged?  And they called me back and said, well, did

7    Mr. Zelinsky agree?  And I presume that that was conveyed to

8    Your Honor, and that that was acceptable because Mr. Miller

9    had appeared before telephonically at a hearing; and I

10   thought that was one way we could accommodate the schedule.

11         I apologize that he is not physically here, Your

12   Honor.  But the -- under the circumstances, I think we can

13   proceed with the status hearing --

14         THE COURT:  Okay.  Right now this hearing is

15   sealed.  Is there any reason for this hearing to continue to

16   be sealed?

17         MR. KAMENAR:  I don't see -- if it's a status

18   hearing just to say what is the next -- what are we going to

19   do in terms of -- with Mr. Zelinsky in terms of what -- the

20   next time the grand jury is meeting, when can we maybe have

21   an accommodation -- you will see in my pleadings that we

22   tried to see whether or not --

23         THE COURT:  Mr. Kamenar, is there any reason for

24   this hearing to be sealed; yes or no?

25         MR. KAMENAR:  Not that I know of, unless there is

1     some grand jury material --

2               THE COURT:  All right.  Let me hear from

3     Mr. Zelinsky.

4               MR. KAMENAR:  By the way, Your Honor, neither is

5     the pleading that we filed I don't think needs to be sealed.

6     Mr. Zelinsky would like to review it to see if there is any

7     grand jury -- he may concur with my position on that.

8               THE COURT:  Is there any reason for this hearing

9     to be sealed since so much of these proceedings including --

10    I think the docket is unsealed.  Is there any reason for

11    this hearing to be sealed?

12              MR. KAMENAR:  Your Honor, there is no reason for

13    this hearing to be sealed.  Should there be a need to

14    address matters related to ongoing investigations, we can

15    address it at the bench with the husher on.

16              THE COURT:  All right.  So I will unseal this

17    hearing.

18              So let's -- let me just say, Mr. Kamenar, the next

19    time you get a court order directing that Mr. Miller is

20    supposed to appear in court I expect to see Mr. Miller in

21    court.

22              MR. KAMENAR:  Yes, Your Honor.

23              THE COURT:  The contempt order of August 10, 2018

24    issued by this Court was stayed if this witness filed a

25    notice of appeal, which he did.  And I do plan to lift that

1     stay now that the Circuit's mandate is issued.

2          I appreciate that the witness filed a motion last

3     night seeking an extension of the stay as opposed to the

4     lifting of the stay.  As of right now, the stay is lifted

5     until I am persuaded that this motion has merit.  I do plan

6     to address that motion today if the Government is prepared.

7          Is the Government prepared to address that motion

8     today, Mr. Zelinsky?

9          MR. ZELINSKY:  We are, Your Honor.

10         THE COURT:  All right.  So let me start with what

11    I read are two parts of this motion or two requests combined

12    in this motion that was filed almost at 9:00 p.m. last

13    night.

14         One part requests that a new subpoena be issued in

15    the name of the United States Attorney for the District of

16    Columbia instead of the Special Counsel since the Special

17    Counsel has -- and I quote from the motion papers at

18    page 2 -- completed his investigation.

19         The second part of the motion, as I mentioned,

20    seeks a continuing stay of the civil contempt order of

21    August 10 and vacatur of the July 31, 2018 order compelling

22    Mr. Miller to testify before the grand jury and, in fact, to

23    quash the subpoena to testify for reasons that are spelled

24    out in the motion papers and, essentially, boils down to the

25    fact that the special counsel's investigation is over; Roger

1    Stone has been indicted; and so having Mr. Miller testify

2    before the grand jury now would be an abuse of the grand

3    jury process because it would be to obtain evidence --

4    discovery in connection with the pending Indictment.

5              Is that essentially it, Mr. Kamenar?

6              MR. KAMENAR:  Yes, Your Honor.

7              Yes, Your Honor.  That summarizes it.

8              THE COURT:  All right.  So let me start with the

9    request for a new subpoena, before I turn to the more

10   substantive issue raised in the motion for -- which is to --

11   essentially, a new reason to quash the subpoena after almost

12   ten months of litigation over the grand jury subpoena.

13             Mr. Kamenar, as to this request to get a new

14   subpoena, does it really make any difference which arm of

15   the Department of Justice has issued the grand jury subpoena

16   to Mr. Miller?

17             MR. KAMENAR:  Your Honor, we just thought that, in

18   terms of the fact that the Mueller investigation is over,

19   his process is not continuing here after his investigation

20   was over.  And we'd just simply request, in terms of -- it's

21   been a year since the other subpoena was issued; that a new

22   subpoena from the U.S. Attorney's Office -- we'd just think

23   that would be preferable in terms of what this has been --

24   Your Honor has the discretion, of course, not to grant that.

25   That was just a --

1          THE COURT:  But why would it be better?

2          Is there any legal reason that it would be better?

3     Is there any practical reason for that to be better?

4          How would it make it better?

5          MR. KAMENAR:  Well, there may be, in that

6     particular subpoena -- since it seems that Mr. Zelinsky's

7     request for whatever information he needs has -- seems to me

8     has shifted over time.  And it may be that a fresh subpoena

9     would narrow the scope of what he needs now that Mr. Stone

10    has been indicted, and so forth.

11         I was just suggesting that it's more of a

12    housekeeping-type thing to see whether or not the subpoena

13    is -- can limit what he needs, whether it's going to be the

14    same as the other one; that's fine, too.  I was just giving

15    the Government the opportunity to do that.

16         THE COURT:  All right.  Mr. Zelinsky.

17         Perhaps the Government has no objection to issuing

18    another subpoena.  Is there any practical, legal, or any

19    other reason why you think a new subpoena must be issued?

20         What's the Government's position with respect to

21    this request?

22         MR. ZELINSKY:  Your Honor, the Government's

23    position is that the old subpoena continues to be valid.

24    There continues to be testimony that is sought by the

25    Government in this case.

1          I want to respond very briefly to the assertion

2     that counsel just made now that what the Government is

3     seeking has shifted over time; it's very much to the

4     contrary.  The Government has been consistent in its -- what

5     it is seeking.

6          THE COURT:  I will interrupt you for just one

7     second.

8          Mr. Kamenar, you may be seated.  One person at the

9     podium, please.

10          MR. ZELINSKY:  Thank you, Your Honor.

11          The Government has been consistent, for the past

12     year that we have been involved in this litigation, what the

13     Government is seeking.  It is seeking testimony from

14     Mr. Miller; that has not changed.  It was true the first day

15     we came in here; it is true now.

16          As to Mr. Kamenar's assertion just now, that a new

17     subpoena may result in a narrowing in some way of what is

18     being sought from Mr. Miller, that of course is belied by

19     the subpoena itself.  This is a testimonial subpoena; it is

20     not a documentary subpoena.  So any new subpoena would not

21     in any way narrow what is being sought.

22          THE COURT:  Remind me, Mr. Zelinsky.

23          Were there -- attached to the testimonial

24     subpoena, was there also a request for documentation that

25     outlined areas both of the document requests as well as --

1   that might define the areas of inquiry?

2           MR. ZELINSKY:  To the extent that any documents

3   were requested in that subpoena, we were before the Court,

4   as I am sure the Court remembers, on that matter.  And there

5   was some assertion from Mr. Miller from his previous

6   counsel, I believe, that the extent of what was sought was

7   onerous and too large to produce.

8           The Government, in an attempt, frankly, to hasten

9   his testimony, as we noted at the time, agreed to limit the

10  scope of the documentary subpoena to a narrower object of

11  materials in order to make sure that Mr. Miller could

12  produce those and then come to testify.  And, of course,

13  that's just the opposite impact it's had.

14          We have counsel making just the opposite argument;

15  that is, the Government's good faith effort to attempt to

16  work with Mr. Miller to limit the scope of what he had to

17  produce in order to actually get him to physically appear

18  resulted in now an argument by counsel that somehow we are

19  outside the scope of what we're seeking or it is no longer

20  relevant.

21          The Government's position always has been and

22  continues to be that Mr. Miller's testimony is sought in an

23  ongoing investigation.  His testimony is sought before the

24  grand jury.

25          As the Court indicated, we have attempted many

1    times to work with counsel to try to arrange a situation

2    whereby Mr. Miller can come and a proffer can take place.

3    We can determine if, in fact, his testimony is necessary

4    before the grand jury.

5             We reached out, as counsel notes in his exhibits,

6    on multiple occasions.  On May 6 we attempted to do that so

7    that we could get in touch with the Court in advance of this

8    so we did not end up in this sort of situation.  As

9    indicated --

10            THE COURT:  It's usually the best practice to stay

11   ahead of the judge if you want to control your fate.

12            MR. ZELINSKY:  We tried, Your Honor.  But as my

13   grandmother would say:  It takes two to tango.

14            As you will see in the exhibits, Mr. Kamenar did

15   not respond to that May 6 email.

16            THE COURT:  I wasn't clear from the submission he

17   made.  I did see the May 6th email, but it wasn't clear to

18   me whether it had been responded to or not because it was

19   clearly dependent on whatever Mr. Kamenar decided to provide

20   to the Court.

21            MR. ZELINSKY:  Well, the simple answer is -- as

22   you will see from my follow-up, we then attempted again to

23   try to get ahead of this matter, to come to the Court with

24   what, in the Government's position, was the standard

25   attempted solution in these circumstances in order to

1    minimize judicial resources, the resources of the grand

2    jury, resources of the Government, and the imposition on the

3    witness.  The witness could make a proffer --

4            THE COURT:  Such as, I wanted the witness here.

5            If the witness was going to continue to decline to

6    testify, he could have been immediately locked up, and

7    stepped back, until he could decide whether he was going to

8    or not, but he is not here.  So at the conclusion of this

9    hearing we will address where we're going to go next.

10           MR. ZELINSKY:  And to be clear, Your Honor, the

11   assertion by Mr. Kamenar that the witness's lack of presence

12   is somehow contingent upon either the travel office of the

13   Government or counsel's representation that they did not

14   oppose his request to the Court, we were very clear about.

15           The United States did not oppose his request to

16   the Court; that is in no way an indication -- I want to be

17   clear -- the Government was in no way intending to usurp the

18   Court's authority; never indicating that we were in any way

19   seeking to modify or change anything about what the Court

20   said.  We just said we would not oppose his request.  Of

21   course, as in any of those circumstances, the Court is the

22   one who makes the decisions.

23           As it pertains to the need for Mr. Miller to

24   travel, in this circumstance I do not believe that the

25   Government actually can pay for Mr. Miller's travel.  We pay

1     to bring witnesses out to speak to the grand jury.  We do

2     not pay to bring private litigants out to appear before the

3     Court when they wish to challenge the contempt proceedings,

4     so that is not a relevant consideration.

5          To answer the question the Court did begin with

6     here, which is the subpoena, the Government's position is

7     the subpoena has been validly issued.  It has been issued by

8     a valid grand jury.  It is no different than when, for

9     example, a United States attorney would resign and a new

10    United States Attorney would come into place.  We do not

11    issue a whole new raft of subpoenas for everyone there.

12         There is a valid subpoena that is here.

13    Mr. Kamenar, it seems, has conceded that the subpoena is

14    valid.  So, in the Government's opinion, the subpoena

15    continues to remain in force.  The case, as Mr. Kamenar

16    notes in this file, has been referred to the D.C. U.S.

17    Attorney's Office.  I am currently a Special Assistant U.S.

18    Attorney representing that office.  Mr. Kravis is an

19    Assistant U.S. Attorney in that office.  The position of our

20    office, the United States Attorney's Office for the District

21    of Columbia -- there is an ongoing subpoena for -- there is

22    an ongoing need for testimony for a subpoena that has been

23    validly issued, and the Government stands behind that

24    subpoena.

25         THE COURT:  All right.  Thank you.

1          I am going to deny -- yes?

2          Do you want to have another opportunity,

3     Mr. Kamenar, to clarify your request for why a new grand

4     jury subpoena has to be issued?

5          MR. KAMENAR:  No, Your Honor.  I will concede that

6     point.

7          What I would like to make clear for the record --

8          THE COURT:  You are withdrawing your request for a

9     new grand jury subpoena to be issued?

10          MR. KAMENAR:  Yes.  I withdraw the request.

11          THE COURT:  Thank you.

12          MR. KAMENAR:  If I may, my motion which is

13     involving the abuse of the grand jury of course still

14     stands, and I would like to be heard on that.  I want to

15     clarify the record here.

16          Mr. Zelinsky and, I think, Your Honor make

17     reference to the fact that we did not respond to the May 6th

18     email from Mr. Zelinsky, in terms of getting together for a

19     proffer meeting.  Well, that was obviously clear; that the

20     response was given on May 6 when we filed our timely motion

21     to stay the mandate for 30 days.  Therefore, there made no

22     sense for -- to agree to have my client testify if we can

23     have the mandate stay and seek Supreme Court review because,

24     if we did, that would essentially moot the case.

25          So we did respond.  And then, when the mandate was

1   denied, again, as in the exhibits, it's very clear -- that's

2   when Mr. Zelinsky came back and says we still continue to

3   seek -- this is May 22nd, an email:

4          Dear Paul, we continue to seek Mr. Miller's

5   testimony for an ongoing investigation.  Please let me know

6   your response to the proposal below -- which was:  Let's

7   have a proffer meeting, et cetera.

8          I responded that I need to discuss these with

9   Mr. Miller.  Two hours later, Mr. Aaron said:  Paul, thank

10  you for the quick response.  So we were not being --

11  accommodating to Mr. Zelinsky; I was looking out for the

12  interest of my client.

13         We were -- and then I said that the Court may want

14  to revisit this in light of the developments that have taken

15  place; one, the Indictment of Roger Stone which, as Your

16  Honor knows, it's improper to use a grand jury to get

17  evidence, as a general rule, on somebody who has been

18  indicted; plus, the investigation has been completed.

19         So we felt it was proper to file this motion which

20  we think has merit in terms of that -- we believe this is an

21  improper use of the grand jury.  We also offered a middle

22  ground that maybe -- if he's just looking for, as he said in

23  his email, what work did my client have with Roger Stone

24  from 2016 on?  Whatever information that's not in the FBI

25  report, the 302, we would be glad to have a telephone

1    conversation that could have an attorney proffer on that --

2              MR. ZELINSKY:  Your Honor, I'm sorry to interrupt.

3              The matter that we had discussed earlier, that is,

4    if we are discussing things relevant to an ongoing

5    investigation -- as I indicated, we should do so with a

6    husher, under seal at the bench.  I just want to reiterate

7    that for the record here today, and I object to any further

8    discussion regarding ongoing investigations by Mr. Kamenar

9    in a public setting.

10             THE COURT:  Or, Mr. Kamenar, the subject matter --

11   you will have an opportunity at the bench, both

12   Mr. Zelinsky, on behalf of the Government, with you at the

13   bench to explain in detail what you understand to be the

14   nature of the ongoing investigation for which the witness's

15   testimony may be pertinent; and Mr. Zelinsky will be able to

16   amplify that ex parte as well.

17             MR. KAMENAR:  Right.  If I could add one more

18   point.  Once the decision of the Court of Appeals came down

19   on February 26, the Government had a right to ask to mandate

20   the issue for good cause.  They didn't do anything for 45

21   days.  They could have done that if they had good cause to

22   seek the mandate to be issued; they did not.  That leads

23   anybody reasonably to conclude that it wasn't that pressing

24   to have Mr. Miller's testimony.  And, therefore, in light of

25   the things that have transpired since then, it appeared that

1   it was no longer needed; that was a logical assumption.

2           THE COURT:  You know, Mr. Kamenar, you have raised

3   a very interesting point in your papers that I plan to ask

4   Mr. Zelinsky about.

5           MR. KAMENAR:  Thank you.

6           THE COURT:  And I think you raise a question in

7   your papers about whether there is that much of a need for

8   Mr. Miller's testimony when the Government didn't seek

9   expedited consideration of your appeal or expedited issuance

10  of the mandate, so how pressing could it be?

11          MR. KAMENAR:  Exactly.

12          THE COURT:  I appreciate that point.  I plan to

13  get an answer to that point before you leave, now that you

14  have turned to the second part of your motion that was filed

15  late yesterday evening seeking to quash the subpoena and

16  vacate the civil contempt order.

17          Let me just get a couple of things clear.  You

18  plainly concede the law is very well settled that grand jury

19  proceedings are entitled to a presumption of regularity.

20  And is it -- is my understanding correct that the only

21  reasons that you think that enforcing the subpoena would be

22  irregular and an abuse of the grand jury proceedings is

23  because, one, there is no -- the special counsel is no

24  longer conducting this investigation and has, basically,

25  closed -- issued his report, he is done; and that Roger

1    Stone is indicted -- those are really your two reasons for

2    why it would be an abuse of the grand jury process to

3    enforce the subpoena?  Do I have that right?

4                 MR. KAMENAR:  That's basically correct, Your

5    Honor.

6                 THE COURT:  Okay.

7                 MR. KAMENAR:  And if I can just add, with respect

8    to the Mueller report being done, he did transfer 11 cases

9    from his docket, so to speak, and the one for Roger Stone

10   notes that it's awaiting trial; whereas, the one that's

11   redacted said there is an ongoing investigation.  So if in

12   terms of -- if they're trying to get information, as they

13   say in their email, what did Mr. Miller --

14                 (Whereupon, Mr. Zelinsky stands.)

15                 THE COURT:  Okay.  This is where you have to --

16                 MR. KAMENAR:  Yes.  I understand, Your Honor.

17                 THE COURT:  -- maintain some confidentiality,

18   Mr. Kamenar.

19                 MR. KAMENAR:  All right.

20                 THE COURT:  All right.  So those are the two

21   reasons that you think are to be an abuse of the grand jury

22   process to not quash the subpoena.

23                 And I also take it that you would concede that if

24   the Government provided legitimate reasons for its

25   continuing need to hear from Mr. Miller related to other

1    charges, for example, against -- that have not appeared in

2    any Indictment against persons or criminal offenses, that

3    the Government would have a legitimate reason to pursue this

4    grand jury subpoena.

5              MR. KAMENAR:  Yes.  The exception is that if there

6    are superseding charges against Roger Stone being

7    involved -- that that would be legitimate, or if there are

8    other defendants that the Government is seeking my client's

9    testimony on, that, too, would be.

10             But, basically, from the papers and the

11   communications, in terms of what they want from my client,

12   it seems to me that they're trying to just use this to get

13   evidence on an ongoing case with Mr. Stone and, therefore,

14   that would be improper.  They're free, of course, to call my

15   client as a prosecution witness at the trial of Mr. Stone

16   and, then, vice versa, if he's called by Mr. Stone's

17   attorneys he can be cross-examined.  But it seems to us at

18   this point we made a prima facie showing, so to speak.  And

19   I think it's incumbent -- the burden shifts, so to speak,

20   for the Government to explain why they still need

21   Mr. Miller's testimony.

22             THE COURT:  All right.  Mr. Zelinsky, let's start

23   with a point that Mr. Kamenar raised in his papers and

24   actually was a puzzle to me.

25             Why is it that Special Counsel didn't seek

1      expedited consideration of review of the appeal or for

2      expedited issuance of the mandate so, as a consequence, it

3      took ten months?

4              MR. ZELINSKY:  In retrospect -- to start with the

5      first issue, that is, expedited appeal, my understanding is

6      that the local rules for grand jury matters do have a bias

7      in favor of expedition at the Court of Appeals, regardless

8      of whether or not such expedition is explicitly requested,

9      as was the case in another grand jury matter; that matter

10     was dealt with very rapidly by the Court of Appeals.

11             It was perhaps an error that the special counsel's

12     office anticipated that another grand jury matter would be

13     handled with similar dispatch.  But we believed, based on

14     our experience with another grand jury matter, the Court of

15     Appeals was moving with -- as rapidly as possible to get an

16     answer to a pressing question; and we believed that it would

17     happen quickly.  That is the answer to question one.

18             Why did we not seek explicit expedition?  In part,

19     because local rules and practice explicitly expedite such

20     processes and because in a similar matter we knew that --

21             THE COURT:  But it's always helpful to have the

22     Government seeking expedition.

23             MR. ZELINSKY:  Perhaps it would have been helpful

24     in this case --

25             THE COURT:  I think so.

1          MR. ZELINSKY:  -- to do that, Your Honor, to the

2     Court.  But that is the reason that it was not sought in the

3     first place.

4          As for the mandate -- not seeking expedition of

5     the mandate, I think there are two issues that are involved

6     in that.  The first is the Government continues to seek

7     Mr. Miller's testimony in an ongoing matter; that is an

8     ongoing investigation.  Mr. Miller's testimony is sought for

9     it.

10         The Government made a balancing assessment as to

11    how rapidly Mr. Miller's testimony was necessary and the

12    other matters the Government had going on at the time when

13    the mandate was issued.  The determination was made that, in

14    terms of government -- available government resources, there

15    was a lot going on, to be quite frank, at that point, in

16    terms of what was happening at the Special Counsel's office

17    from publicly available material and, given where resources

18    were focused, that was not the first and primary issue.

19         As Mr. Kamenar has indicated, we are now in a

20    period where there is significantly more resources to

21    dedicate to an investigation, an ongoing investigation.  And

22    so to the extent that there was not a move to issue that

23    mandate rapidly, it was because the Special Counsel was

24    involved in a great deal of ongoing matters then and a

25    determination was made that we should not needlessly ask the

1    Court for something when we were not necessarily in a

2    position to rapidly follow up; and we didn't want to be

3    misleading and make that characterization.  That is not the

4    case now, it's been transferred to the D.C. U.S. Attorney's

5    Office where there are ample resources.

6              We are more than ready -- as indicated by our

7    emails of May 6th, by our email of May 22nd -- to proceed

8    with all available speed to make sure that we resolve this

9    matter as rapidly and as expeditiously as possible.

10             THE COURT:  All right.  So Mr. Kamenar has raised

11   two different reasons for what he calls his prime facie

12   case, to meet his burden of showing that there is grand jury

13   abuse by continuing to seek Mr. Miller's testimony before

14   the grand jury; one, Bob Mueller has issued his report, he

15   is done; two, Roger Stone has been indicted.

16             Is it the Government's position that it has

17   continuing legitimate reasons to pursue Mr. Miller's

18   testimony before the grand jury?

19             MR. ZELINSKY:  Absolutely, Your Honor.

20             THE COURT:  And would you like to approach and

21   explain to the Court and put on the record on an ex parte

22   basis what those reasons are?

23             MR. ZELINSKY:  Thank you, Your Honor.

24             (Whereupon, a sealed bench conference was held.)

25   ████████████████████████████████████████████





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24      (Whereupon, the sealed bench conference concludes.)
25      THE COURT:  All right.  Mr. Kamenar, do you want

1    to add anything to your papers before I rule?

2              MR. KAMENAR:  I'm sorry, Your Honor?

3              THE COURT:  Do you want to add anything to your

4    papers or anything else that you would like to say before I

5    rule?

6              MR. KAMENAR:  No, Your Honor.

7              I think it's pretty well summarized.  Only that,

8    with respect to the need for my client -- Mr. Zelinsky did

9    represent in his email that he wants to focus on the work

10   that --

11             MR. ZELINSKY:  Your Honor.

12             MR. KAMENAR:  This is --

13             THE COURT:  Why don't you approach, both of you.

14             (Whereupon, a sealed bench conference was held.)

15   ██████████████████████████████████████████████████

16   ██████████████████████████████████████████████████

17   ██████████████████████████████████████████████████

18   ████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████

20   ███████████████████████████

21   ██████████████████████████████████████████████████

22   ████████████████████

23   ████████████████

24   ███████████████████

25             (Whereupon, the sealed bench conference

1    concludes.)

2         THE COURT:  You may go back to the podium.

3         To the extent, Mr. Kamenar, that you have

4    questions about the full scope of the inquiries that will be

5    made of Mr. Miller in the grand jury, that's something that

6    you can confer in private with Mr. Zelinsky and Mr. Kravis

7    about, and it's not something that the Court has to get

8    involved in.

9         Is there anything further that you want to say

10   before I rule on your motion?

11        MR. KAMENAR:  No, Your Honor.

12        Only that if the Court is going to deny the motion

13   that we would work out with counsel for the Government, as

14   you did in your prior order, where you indicated that -- in

15   terms of appearing before the grand jury, that we could

16   arrange when that would take place.  So I would just like to

17   put down on the record that we need some time to make those

18   arrangements.

19        THE COURT:  Well, we'll see about that.

20        All right.  Following an appeal of this Court's

21   August 10, 2018 order finding the witness, Mr. Miller, in

22   contempt for failing to appear before the grand jury for

23   reasons that this Court found insufficient and the Court of

24   Appeals ultimately also found insufficient to warrant

25   quashing of the grand jury subpoena, the D.C. Circuit issued

1    its mandate yesterday returning the case to this court

2    having forewarned the parties and this court that it was

3    about to issue the mandate on May 28, which it did.

4         Late last night, the witness filed a motion

5    seeking to vacate the civil contempt order of August 10,

6    2018, to vacate the order of July 31, 2018 compelling him to

7    testify before the grand jury, and to quash the special

8    counsel's subpoena to testify, and to stay imposition of the

9    July 31 order pending disposition of the motion.  I plan to

10   dispose of that motion now.

11        There were two parts to that motion; the first

12   part being the witness's request that a new grand jury

13   subpoena be issued by the U.S. Attorney's Office for the

14   District of Columbia rather than by the special counsel's

15   office; that request now has been withdrawn, so this Court

16   need not rule on that portion of the motion making that

17   request for a new grand jury subpoena.

18        As to the portion of the motion seeking to vacate

19   the civil contempt order of August 10, 2018 and to quash the

20   grand jury subpoena, that motion is denied.

21        The law is well-settled, as this motion makes

22   clear and points out, that a grand jury may not be used for

23   the sole purpose of pretrial discovery in cases in which an

24   Indictment has already been returned because it is improper

25   for a prosecutor to use the grand jury for trial

1   preparation.  And, in this case, the witness has said

2   that -- offered two reasons for why enforcing the contempt

3   order and compelling him to testify would be an abuse of the

4   grand jury process because Roger Stone has been indicted and

5   that having Mr. Miller, who is associated with Mr. Stone,

6   testify before the grand jury is, to the witness's mind,

7   simply an effort to obtain additional pretrial discovery in

8   a case that's already been indicted.  That would be

9   improper, as I have just stated.

10          And that proposition has been very well and

11   articulately laid out by Judge Friedman of this court in

12   *U.S. v Sitzmann*, 74 F. Supp 3d 96, jump cite 122 through 23,

13   a D.D.C. case from 2014; also, see *U.S. v Star*, a Ninth

14   Circuit case from 1972.

15          At the same time that a grand jury cannot be used

16   to obtain pretrial discovery for an indicted case, it is

17   also well settled that it is not improper at all for the

18   Government to continue to employ a grand jury after an

19   Indictment has been returned so long as strengthening the

20   Government's case or preparing for trial is not the

21   prosecutor's sole or dominant purpose; see Judge Friedman's

22   case in *Sitzmann*; also, see *In re Grand Jury 95-1* involving

23   *Anderson*, 59 F. Supp. 2d 1, a D.D.C. case from 1996; see,

24   also, *U.S. v U.S. Infrastructure, Inc.*, 576 F.3d 1195, an

25   Eleventh Circuit case from 2009, which stated that a grand

1    jury cannot be used solely or primarily to gather evidence

2    against an indicted defendant, but it be can used to

3    investigate whether a defendant committed crimes not covered

4    in the Indictment.  See *U.S. v Leung*, a Second Circuit case

5    from 1994, stating it is improper to use a grand jury for

6    the sole or dominant purpose of preparing for a trial under

7    a pending Indictment, but not for other reasons.

8         Also, see *U.S. v Ruppel*, a Fifth Circuit case from

9    1982, and *In re Grand Jury Proceedings*, 632 F.2d 1033, a

10   Third Circuit case from 1980 making the same points.

11        Where the purpose of the grand jury process is

12   directed to other offenses or other individuals:  Any

13   collateral fruits from bona fide inquiries may be utilized

14   by the Government; see *U.S. v Sellaro*, Eighth Circuit case

15   from 1973.  See, also, *U.S. v Flemmi*, a First Circuit case

16   from 2001, stating that:  Evidence obtained pursuant to an

17   ongoing grand jury investigation may be offered at the trial

18   on the initial charges.  See *U.S. v Alred*, Eleventh Circuit

19   case from 1998, holding that:  While the Government may not

20   use the grand jury for purposes of discovery or trial

21   preparation, it may continue investigation for a legitimate

22   reason even if it thereby obtains information relevant to

23   the pending prosecution as an incidental benefit.

24        See *In re Grand Jury Proceedings*, a First Circuit

25   case from 1987, stating:  The prosecutor in a trial may use

1    evidence incidentally gained from a grand jury primarily

2    investigating other crimes.  See *U.S. v Gibbons,* a Tenth

3    Circuit case from 1979, stating that a grand jury proceeding

4    is not improper just because the Government may derive

5    incidental benefit from the post Indictment investigation.

6          In sum, it's not improper for the Government to

7    continue to use the grand jury post Indictment when the

8    grand jury is investigating other offenses that are not

9    covered in the pending Indictment or is investigating

10   unindicted potential targets.

11         Here, the Government has provided the Court with

12   legitimate reasons for its continued use of the grand jury

13   to hear from this witness.  Without going into any detail as

14   to what those other legitimate reasons are, they are on the

15   record in the sealed portion of this transcript.  And these

16   continuing, legitimate reasons to hear from this witness

17   make it plain that the grand jury is not being abused in

18   this case and that the Government continues to have a need

19   to hear from Mr. Miller.

20         Due to these legitimate reasons, the witness has

21   not met his burden of establishing that compelling his

22   testimony before the grand jury would amount to abuse of the

23   grand jury process.  Accordingly, the witness's motion is

24   denied.

25         All right.  Mr. Zelinsky, when is the next time we

1    can have this witness testify before the grand jury?  Or do

2    you want to have time to consult with Mr. Kamenar about

3    those arrangements?

4             MR. ZELINSKY:  If we can have a moment to consult,

5    Your Honor.

6             THE COURT:  Also, make sure that you are

7    consulting about, perhaps, a joint motion to continue a stay

8    that has now been lifted to compel his testimony.

9             (Proceeding pauses.)

10            THE COURT:  May I just say that this case has been

11   pending for almost ten months.  The D.C. Circuit made it

12   clear last week, over a week ago at this point, that it was

13   issuing its mandate yesterday, and you all are having to

14   have this lengthy a conversation to decide how we're going

15   to proceed?

16            MR. ZELINSKY:  Your Honor, Mr. Kamenar has

17   indicated that he would not like to bring his client in to

18   proffer, that he would prefer to put his client in front of

19   the grand jury; and we can have a grand jury available for

20   testimony this Friday.

21            THE COURT:  All right.  So, from my August 10th

22   order, I ordered that the witness shall be confined at the

23   District of Columbia jail, as that facility is nearest to

24   the grand jury, until such time as the witness was willing

25   to give such testimony and provide such information as

1       required by the Court's July 31, 2018 order provided that

2       such period of confinement shall not exceed the life of the

3       term of the grand jury, including extensions, before which

4       such refusal to comply with the Court's order occurred and,

5       in no event shall such confinement exceed 18 months.  And it

6       is further ordered that this order is stayed until

7       August 14th, at which time the stay shall be lifted, except

8       that the stay shall remain in place if the witness has filed

9       a notice of appeal or the witness and the Government have

10      filed a stipulation setting out an alternative arrangement.

11              So that stay that remained in place until this

12      morning because the witness filed a notice of appeal is now

13      lifted.  And I take it that the witness is now agreeing to

14      testify on Friday, so there is no reason to confine him at

15      the D.C. jail until Friday; is that what you are saying,

16      Mr. Kamenar?

17              MR. KAMENAR:  Yes, Your Honor.

18              THE COURT:  And you understand that if Mr. Miller

19      does not appear before the grand jury on Friday he will be

20      in contempt and there will be an arrest warrant issued for

21      him?

22              MR. KAMENAR:  Yes, Your Honor.

23              THE COURT:  Do you understand that?

24              MR. KAMENAR:  Yes.

25              THE COURT:  Does your client understand that?

1          MR. MILLER:  Yes, Your Honor.

2          THE COURT:  All right.  I expect I will hear from

3     the Government should Mr. Miller fail to appear on Friday.

4          At what time, Mr. Zelinsky?

5          MR. ZELINSKY:  9:30 a.m., Your Honor.

6          THE COURT:  9:30 a.m. Friday, Mr. Miller's

7     presence is required.

8          I will continue to stay my order of August 10

9     ordering him confined at the D.C. jail until his

10    testimony -- since he has indicated his willingness to

11    testify on Friday.

12         Is there anything further to address today,

13    Mr. Zelinsky?

14         MR. ZELINSKY:  Nothing further from the

15    Government, Your Honor.

16         THE COURT:  Mr. Kamenar.

17         MR. KAMENAR:  No, Your Honor.

18         THE COURT:  All right.  You are all excused.

19         MR. KAMENAR:  One other question, Your Honor, I'm

20    sorry.  Since this hearing was open, would the Court unseal

21    the motion that I filed since we have discussed it, and

22    there is nothing in there that --

23         THE COURT:  I think there are attachments to that

24    motion which may contain grand jury-related information.

25         MR. KAMENAR:  Well, those can be --

1      THE COURT:  Am I correct on that, Mr. Zelinsky?

2      MR. KAMENAR:  Those can be excised, if you think

3  there is something in there.

4      THE COURT:  Mr. Zelinsky.

5      MR. ZELINSKY:  You are correct.  We will propose

6  redactions to the Court several hours from now.

7      THE COURT:  By close of business today I will

8  expect those proposed redactions so that, by close of

9  business today or shortly thereafter -- by "close of

10  business" I mean 5:00, I will be able to unseal as much as I

11  can of the motion filed last night.

12      MR. ZELINSKY:  Thank you, Your Honor.

13      THE COURT:  Thank you.

14      THE DEPUTY:  This Honorable Court is adjourned.

15      (Whereupon, the proceeding concludes, 11:48 a.m.)

16                    **CERTIFICATE**

17

18      I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

19  certify that the foregoing constitutes a true and accurate

20  transcript of my stenographic notes, and is a full, true,

21  and complete transcript of the proceedings to the best of my

22  ability.

23

    Dated this 29th day of May, 2019.

24

    /s/ Elizabeth Saint-Loth, RPR, FCRR
25  Official Court Reporter